FRANK HANLON ET AL. V. UNION PACIFIC RAILWAY COMPANY.

FILED APRIL 3, 1894. No. 4594.

1. **Trespass:** TITLE. An action of trespass *quare clausum* can only be maintained where the plaintiff had title or possession at the time of the acts complained of. *Chicago, R. I. & P. R. Co. v. Shepherd*, 39 Neb., 523, followed.

2. ———: ———. So where the trespass complained of consists of the occupation of the land by railroad tracks, and the entry and construction of the tracks is admitted to have been beyond the period of limitations for such an action, the plaintiff, to recover, must show title in himself to the land occupied.

3. **Boundaries:** PAROL EVIDENCE. Where the description in a deed contains a call to and along a line, the true location of which is uncertain, parol evidence is admissible to show that at the time of the conveyance a particular line was in the community generally recognized by the name used in the deed.

4. ———: MAPS AS EVIDENCE. Maps proved to be in common and accepted use in the community at the time of the conveyance are likewise admissible for the same purpose.

5. **Adverse Possession.** In order to create title by adverse possession, the possession, in addition to other elements, must be exclusive for the period of limitations.

6. **Trespass:** EVIDENCE OF TITLE.   Evidence that a roadmaster in charge of the construction of a side track over certain land, when a person claiming to be the owner of the land objected to the construction of the track, promised such person that he would be paid for the land occupied, is insufficient to prove that the company entered under a license from the claimant and in recognition of his title.

7. ———: ———.   Nor will a license be implied from the fact of occupancy for a long time without objection on the part of the claimant, the claimant relying on adverse possession during that period to establish his title.

8. **Adverse Possession:** CORPORATIONS.   A corporation chartered by an act of congress and incompetent to acquire title to land in this state may still maintain a possession adverse to all persons except the state.   *Myers v. McGavock*, 39 Neb., 843, followed.

9. **Review:** ASSIGNMENTS OF ERROR.   In order to obtain a review of alleged errors the petition in error must assign the same with such particularity as to enable the court to determine the precise ruling complained of.

ERROR from the district court of Dodge county.   Tried below before MARSHALL, J.

*Frick & Dolezal*, for plaintiffs in error.

*John M. Thurston, W. R. Kelly*, and *E. P. Smith, contra.*

IRVINE, C.

The plaintiffs in error, who were also plaintiffs in the district court, alleged that they were the heirs and widow of Patrick Hanlon, deceased; that on March 18, 1878, Patrick Hanlon became the owner of two tracts of land described in the petition by courses and distances, both tracts being in the city of Fremont; that Patrick Hanlon died seized of said land July 1, 1881; that in March,

1879, and at divers other times between that date and the beginning of the action, the defendant "without right or authority, wrongfully and unlawfully, and with force entered upon said premises at and near the buildings thereon situated and erected, and committed acts of trespass on said premises by digging the soil thereof, by laying and putting thereon tracks of iron and wood, and leaving and placing thereon daily during said period steam engines and cars propelled by steam, and by making and suffering within the four years last past loud noises and deleterious and offensive odors by live hogs and cattle in said cars, to the injury of said premises and said buildings thereon situate, and to the depreciation of rental value of said premises and said buildings during all of said times, to the damage of plaintiffs in all in the sum of $1,975." The action was begun April 28, 1888. For the purposes of this opinion it will not be necessary to set forth the answer in detail. Among other things in the answer the trespasses complained of and the ownership of plaintiffs' ancestor are denied. There was a verdict and judgment for the defendant.

The first assignment of error which we shall notice relates to the sufficiency of the evidence to sustain the verdict. This is the assignment chiefly relied upon and has been argued ably and elaborately. It will not be necessary to review all the evidence or discuss all the details of the case, but its intricacies are such and the questions of fact presented are so combined with questions of law that it is due to counsel that we should not pass over the assignment with a statement of our conclusions, but that our reasons should be given for holding that the evidence sustains the verdict.

The tracts to which plaintiffs claim title adjoin one another and constitute a portion of what is known as "lot 3," in block 214, in the city of Fremont. The original plat of the city of Fremont shows block 214 as one of the

southern tier of blocks in the town site. The lots in this
portion of the town site were 66 feet by 132 feet. Lot
3 fronts north and is the third in order, counting from
the east line of the block. It appears, however, that the
town survey was made prior to the government survey, and
through some error, apparently by not allowing for the
variation of the compass, the lines were not correctly lo-
cated, and, at some later period not definitely fixed, it
was ascertained that the half section line which constitutes
the southern boundary of the town site did not correspond
to the southern line of the town site as originally platted,
but extended through the southern tier of blocks, forming,
some place westward of block 214, an angle with the
southern limit as originally surveyed, cutting off the four
southern lots of block 214, and portions of the southern
ends of the four northern lots, including lot 3.

When the construction of the Union Pacific railway was
undertaken, the owner of the land south of this half section
line conveyed that land to the railway company Lot 4,
in block 214, was also conveyed to the company. It ap-
pears from the evidence that in 1865 condemnation pro-
ceedings were had for the purpose of appropriating land
in Dodge county for the use of the railway company.
Under the act of congress relating to such appropriations
the report of the appraisers was required to be returned
into a court of record, any judge of a court of record be-
ing authorized to appoint the appraisers. Payment of the
amount awarded was required to be made to the clerk
of the court. There is in evidence from the files of the
district court of Dodge county an oath of appraisers and
an award of damages to Alvin Coe, then the owner of
lot 3, the land being described as follows: "Said ap-
praisal being for two hundred feet on each side of the
central line of said road as located by the engineer of
said company, to-wit, lot number 3, in block 214, in the
town of Fremont, amounting to about four rods of land,

in county of Dodge, in territory of Nebraska." No other record relating to condemnation proceedings was found, but it did appear that there had been a fire in the court house whereby a portion of the records of the court was destroyed.

About the year 1865 the Union Pacific railway was constructed through Fremont and its depot located near the land in controversy. About the year 1869 Patrick Hanlon contracted for the purchase of a portion of lot 3 and entered into the possession of that portion. March 18, 1878, this portion was conveyed to him by the following description: "Commencing at the northwest corner of lot 3 in block 214 of the city of Fremont, Dodge county, Nebraska, thence running easterly on south margin of First street thirty feet; thence running southerly at a right angle to First street to the Union Pacific Company's grounds; thence running northwesterly along the Union Pacific Railway Company's grounds to the west line of lot number 3 aforesaid; thence running northerly along the west line of said lot to First street, the place of beginning."

In the meantime, on October 7, 1876, the other tract had been conveyed to Hanlon by the following description: "Commencing at a point in south margin of First street ninety-six feet easterly from northwest corner of block 214 of the city of Fremont, Nebraska; thence running southerly at right angles to First street, thence running in a southeasterly direction along said railroad company's grounds to the Union Pacific Railroad Company's grounds, about twenty-three feet to the west line of a certain parcel of land sold to Fred Weis, October 5, 1876; thence running northerly along west side of land sold Weis to First street; thence running westerly along south margin of First street twenty-two feet to the place of beginning."

About the year 1872, and while Hanlon was in possession of a portion of the premises, the railway company constructed a side track extending across the southern portion

of lot 3 not far from the southern end of Hanlon's building, and at a later period another track was constructed further to the south but crossing the lot. It is of these tracts that the plaintiffs complain, claiming ownership of the land upon which they are situated.

A great deal of the argument of plaintiffs in error is devoted to showing that the defendant is without title to the land occupied by the tracks. This, however, becomes immaterial. The action is trespass and cannot be maintained unless plaintiffs either had title or were in possession of the premises at the time of the acts complained of. (*Chicago, R. I. & P. R. Co. v. Shepherd*, 39 Neb., 523, decided at the present term.) It is conceded that no recovery can be had for any acts except those committed within four years preceding the commencement of the action. The question is, therefore, not whether the defendant had title, but whether the plaintiffs showed themselves to have either title or possession during the period to which the action relates. The entry being long before the period of limitations, no claim can be based on possession.

In determining the plaintiffs' title we are met with difficulties, arising, first, from the errors in the original survey; second, from the uncertain language of plaintiffs' deeds; third, from the uncertainty of the records as to the land appropriated by the condemnation proceedings.

There is much evidence tending to show that the railway's main track, as originally constructed and at present existing, passes in a general southeasterly and northwesterly direction over the land immediately south of the half section line which forms the south boundary of lot 3. Such record as we have of the condemnation proceedings shows a purpose to appropriate land to the width of 200 feet on each side of the line of the railway as originally located. There is no evidence to show that the railroad was in fact constructed or that it is now maintained according to the original location. There is, however, evidence

tending to show that soon after the construction of the
railroad, maps were made indicating these grounds as ex-
tending 200 feet north of the center line of its main track.
Such maps have been in common and public use in the city
of Fremont ever since. The line as shown on the maps
crosses lot 3 near the northern side track, but whether
far enough north to include it is by no means certain. It
is, however, shown that a line 200 feet from the center
line of the main track would include all the land covered
by the side tracks. The call in plaintiffs' deeds is in effect
south to the railway company's grounds, and the evidence
referred to was submitted to the jury upon the theory that
if it should find that at the time of the conveyances a line
200 feet from the center line of the track was generally
known in Fremont as the boundary of the railroad com-
pany's land, then such line should be taken as the southern
boundary of plaintiffs' land in the absence of evidence to
show that a different line was intended.

Objections are urged to this line of evidence upon the
ground that it amounts to establishing title in the railway
company by parol. This is not true. The question has
nothing to do with the railway company's title. It is
merely extrinsic evidence for the purpose of identifying
the subject-matter of the conveyances to Hanlon. Whether
or not this was the true northern boundary of the railway
company's land is immaterial. The question is, merely,
what was the intention of the parties in the conveyances to
Patrick Hanlon? And the evidence was admissible for that
purpose, upon the same principle that it would be admissi-
ble provided the grantor in that deed had described it as
his "hotel property in the city of Fremont," to prove what
property was understood by the parties by that description.
A somewhat similar question has been recently discussed and
decided in the case of *Schneider v. Patterson*, 38 Neb., 680.

Again, the award of the appraisers in the condemnation
proceeding describes the land taken in lot 3 as "about

four rods." This, unenlightened by any other evidence, would probably mean, as plaintiffs contend, four square rods; but the 200 foot line is also referred to, and taking the center line of the track as constructed as a basis, and including all within 200 feet of that center line, the land appropriated would include just about four rods, measuring north and south along lot 3, thus reaching the same result. Whether or not the record introduced was sufficient to show title in the company, it was sufficient to add some force to the evidence of notoriety in regard to the railway boundary. We think that all of this evidence, taken together, was sufficient to sustain the verdict of the jury.

The plaintiffs contend that the call in one of the deeds, of "about twenty-three feet" for the southern boundary, corresponds closely to the line of one of the southern side tracks, and that it should therefore be inferred that that line was intended. But it also corresponds just as closely with a line drawn anywhere parallel to the main track of the railway company, so we can see no force in the argument. It does not closely correspond to the length of the southern line of lot 3 between the side lines given, and from that fact, as well as from all the language of the description, it is clear that it was not intended to convey to the south line of lot 3.

The case was also presented upon the theory that although the plaintiffs may have had no paper title to the portion of the land occupied by the tracks, they had title by adverse possession. It does appear that Patrick Hanlon, prior to the construction of the first side track, had planted trees and exercised dominion over the southern portion of the lot. The first track was, however, constructed within two or three years after the time he took possession. Since the construction of that track Patrick Hanlon, during his lifetime, and his heirs, since his decease, have maintained sidewalks over the southern portion of the lot and probably exercised other acts of dominion, but the railway com-

pany has continuously maintained its side tracks there
without obstruction or hindrance by the Hanlons.    Such
possession as the Hanlons had was, therefore, not exclusive,
an element which is essential to create title by adverse pos-
session.    There is much argument relating to the theory
that the tracks were maintained under a license from Pat-
rick Hanlon.    If so, the occupancy by the railway com-
pany would not be adverse to him, and this element of ex-
clusiveness might be supplied.    It is only in this view of
the case that we can see that the question of a license is
particularly material.    So far as an express license is con-
cerned, the evidence upon which this claim is based is, in
brief, that when the construction of the side tracks was
commenced, Hanlon protested to the roadmaster, who prom-
ised Hanlon that he would be paid for the property, and
then Hanlon permitted the work to proceed.    The authority
of the roadmaster does not appear.    He seems to have
been in charge of the work of constructing the side track,
but we do not think that that fact implied in him any
authority to bind the company by a recognition of Han-
lon's title.    There is evidence tending to show that aside
from maintaining the side tracks the railway company has
exercised other acts of dominion over the property, as by
grading and filling, and there was ample to warrant the
jury in finding that the occupancy of the railroad was un-
der a claim of ownership and adverse to the Hanlon title.
There is an assertion that the evidence is sufficient to estab-
lish an implied license, but so far as the claim of title in
the Hanlons by adverse possession is concerned, there
could be no implication of license from the fact of occu-
pancy.    To permit this would destroy the whole theory of
adverse possession.    By the same reasoning the occupancy
of the Hanlons themselves would be deemed to be under a
a license from the real owner of the southern portion of
the lot, whoever he may be.

    In this connection we should notice the argument, repeat-

·edly made upon different points of the case, that the Union Pacific Railway Company, not being a corporation organized under the laws of this state, cannot exercise the right ·of eminent domain under the present constitution, and cannot otherwise acquire title, even by adverse possession. This ·question has been recently considered in the case of *Myers v. McGavock*, 39 Neb., 843, decided at the present term, where the former decisions are cited, and the conclusion reached that the title of such a railway company can be attacked only by the state, and that a title may be acquired ·by adverse possession which would be valid against all but the state. In this case the railroad does not plead title by adverse possession, but it is the plaintiffs' title we are con·sidering; and if the railroad could acquire title by adverse possession, then it may occupy adversely, and such occupancy of this land would prevent the plaintiffs' possession from being exclusive.

The plaintiffs claim that even though they fail to establish title in themselves to the land occupied by side tracks, their petition contains a count based upon a nuisance caused ·by leaving cars of live stock upon the track close to plaintiffs' buildings, obstructing the light and causing injurious and offensive odors. The petition is in one count. We have quoted the material portion thereof. It will be seen ·that the allegations relied upon as stating a case for damages by reason of a nuisance are inserted merely in connection with the other averments of acts of trespass and by way of allegations of damages. But treating the petition as one declaring on nuisance, it is insufficient for that purpose. The hauling of cars loaded with live stock is a necessary and proper operation of a railway company. The placing of such cars upon side tracks, even within the limits of a city, is lawful and necessary. It is not alleged that this side track was an improper or unreasonable place to place such ·cars, that they were placed there unnecessarily, or that ·they were allowed to remain an unreasonable length of

time. These, or similar allegations, would certainly be necessary to state a cause of action based upon a nuisance. While there is some testimony upon these elements, such testimony does not supply the want of proper averments in the petition, and there is also so much contradictory evidence that upon a proper petition a verdict for the defendant would have to be sustained.

It is assigned as error that the court erred in stating in the presence of the jury that plaintiffs could not claim their premises to have extended south of the half section line. We presume that this assignment is based upon the theory that such a statement amounted to an oral instruction. It was made during the trial and seems to have been an incidental remark in connection with the discussion of a question of law arising. We do not think that it was in anywise prejudicial, for we cannot find any claim of ownership beyond the limit mentioned, and we cannot see how such a claim could be supported under any view of the case.

There was an exception to each instruction given by the court, either of its own motion or at defendant's request, and an exception to the refusal of each of plaintiffs' instructions refused. Error on this subject is assigned as follows: "Sixth—The court erred in giving instructions numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17, respectively, of the instructions given by the court of its own motion." The instructions given at request of defendant, and those requested by plaintiffs and refused, are grouped likewise and assigned in the same manner. Whether such assignment is sufficient we will not here determine. They cover the whole charge, and, so far as they are at all referred to in the briefs of counsel, it is in connection with a general discussion of the evidence in the case and the sufficiency thereof. The only points suggested upon which it is claimed the instructions are erroneous are in reference to that discussion, and we think what has been said upon the question of the sufficiency of the evidence covers all questions raised.

Complaint is made of errors in the admission and rejection of testimony and acts of alleged misconduct of an agent of the defendant relating to a view of the premises by the jury. The assignments of error relating to these subjects are as follows: "Second—There was misconduct of the defendant and its agent, as appears in the bill of exceptions, for which a new trial should have been granted, defendant being the prevailing party. * * * Third— There was irregularity in the proceedings on the part of the defendant and its agent by which, as shown in the bill of exceptions, the plaintiffs were prevented from having a fair trial. * * * Ninth—Errors in the rejection of evidence, exhibits, and papers, as shown in the bill of exceptions, and to each of which plaintiffs duly excepted. Tenth —Errors in the admission of testimony, exhibits, and papers in evidence over objections of plaintiffs, as shown in the bill of exceptions, and to each of which plaintiffs duly excepted. Eleventh—Errors in striking out testimony after the same had been admitted in evidence, as shown by the bill of exceptions, and to all of which the plaintiffs duly excepted." These assignments are too general to call upon the court to review the errors complained of. (*Lynam v. McMillan*, 8 Neb., 135; *Burlington & M. R. Co. v. Harris*, 8 Neb., 140; *Tomer v. Densmore*, 8 Neb., 384; *Graham v. Hartnett*, 10 Neb., 517; *Lowe v. Omaha*, 33 Neb., 587; *Gregory v. Kaar*, 36 Neb., 533; *Riverside Coal Co. v. Holmes*, 36 Neb., 858.) Errors complained of must be assigned in the petition in error with such certainty as to enable the court to ascertain the particular ruling of which complaint is made.

JUDGMENT AFFIRMED.

Post, J., not sitting.