[S. F. No. 6531.   In Bank.—November 6, 1915.]

EDNA F. BECKETT, as Administratrix of the Estate of
William M. Francis, Deceased, et al., Appellants, v.
CITY OF PETALUMA (a Municipal Corporation),
Respondent.

ADVERSE POSSESSION—POSSESSION OF TENANT AS POSSESSION OF LAND-
LORD.—For the  purposes of adverse possession, or of acquiring
title by prescription, the possession of a tenant is deemed to be the
possession of his landlord.

ID.—MUNICIPAL CORPORATIONS—EVIDENCE IN SUPPORT OF ADVERSE POS-
SESSION.—Evidence that defendant, city of Petaluma, through its
tenants, had been in the exclusive, continuous, and adverse possession
of real property at least ten years prior to the commencement of
the action to quiet title fully supports the finding that the action is
barred by the statute of limitations.

ID.—TITLE BY PRESCRIPTION.—A judgment that defendant is the owner
in fee simple of the premises and that plaintiff has no title, and
enjoining plaintiff from asserting title, goes beyond the scope au-
thorized by the defense of the statute of limitations as such.

ID.—MUNICIPAL CORPORATIONS—TITLE BY PRESCRIPTION—ACTS WITHOUT
THE POWERS OF THE MUNICIPALITY.—The possession of real property
by tenants of a city of the fifth class for a purpose not within the
lawful municipal powers of the city, for the length of time necessary
to constitute adverse possession, confers upon the city a title by pre-
scription.

ID.—COLLATERAL ATTACK.—The question of whether or not property in
the possession of a city is used for purposes within its corporate
powers cannot be raised collaterally, nor at all, except by the state,
or a taxpayer, or some person authorized to act in behalf of its
inhabitants.

ID.—ESSENTIAL ELEMENTS OF.—In determining whether adverse posses-
sion has occurred, the essential element is the disseisin of the plaintiff
by the possession or hostile occupancy of the defendant, and the
character of the things done on the land during that possession is
immaterial.

APPEAL from a judgment of the Superior Court of So-
noma County, and from an order refusing a new trial.
Thomas C. Denny, Judge.

The facts are stated in the opinion of the court.

R. H. Cross, for Appellants.

G. P. Hall, and W. F. Cowan, for Respondent.

SHAW, J.—The action herein was begun by the plaintiffs
to quiet their title to a parcel of land against any and all
claims of the defendant. The plaintiffs claimed title under
William M. Francis. The parcel of land in controversy is
a tract 148 feet square at the corner of Bremen and Jefferson
streets, in the city of Petaluma.

In defense the city alleged that it has been in the uninter-
rupted adverse possession of the property for more than
twelve years before the action was begun and had paid all
taxes thereon during that period; in brief, that it had acquired
title thereto by prescription, and that the action was barred
by sections 318 to 328, inclusive, of the Code of Civil Pro-
cedure.

The court found in favor of the defendant on both issues.
It is claimed that these findings are not supported by the
evidence and are contrary to law.

It was, in effect, stipulated at the trial that William Fran-
cis acquired title to the parcel on May 27, 1879, by deed from
one Julius Pelton, which deed was duly recorded. The tes-
timony of Edna F. Beckett, the daughter, showed that Will-
iam Francis died on September 10, 1880, leaving surviving
as his heirs the plaintiffs Mary E. Snider, his widow, and
Edna F. Beckett and Grace Severy, his daughters. There
was no direct evidence that this William Francis was the
same person as the William M. Francis named in the com-
plaint as the ancestor of these persons. The court below
found that William M. Francis was the ancestor of the plain-

tiffs.   There was other evidence tending to show that the witness, in so testifying, referred to William M. Francis, and that they were one and the same person.   The objection on this ground should be disregarded.   The principal controversy arises upon the question whether or not the city of Petaluma has gained title to the property by adverse possession.   Some subordinate questions concerning the nature and validity of certain trusts declared in deeds made by those under whom the city claims are also presented.   We will state the essential facts as briefly as we can.

On February 11, 1898, John A. McNear and others, all holding under a tax title, conveyed to William Hall and four other persons named the southwesterly 75 feet of the parcel in question.   On November 7, 1898, the said persons conveyed the same 75 feet to certain other parties as corporate trustees of the city of Petaluma.   These deeds both declared that the property was conveyed in trust for the purpose of erecting and conducting thereon a shoe manufactory, and to that end it was declared that the grantees in the McNear deed should lease the property to a shoe manufactory, and thereupon convey it, subject to the lease, to the city of Petaluma in trust for the citizens of Petaluma, to hold as a site for a manufacturing plant, and not otherwise.   The deed from McNear's grantees to the trustees of the city of Petaluma provided that said trustees should lease the parcel with the buildings thereon to a shoe company, subject to the condition that the property should be held in trust for the citizens of Petaluma as a site for a manufacturing plant.

The suggestion that these trusts are invalid trusts to convey under the doctrine established in the *Estate of Fair*, 132 Cal. 523, 533, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000], is without force.   Perhaps they might be declared invalid if attacked by the grantors in the respective deeds or their successors in interest.   But they are not parties to the action and, so far as appears, they do not assert the invalidity of the trusts, and are entirely satisfied with the execution thereof.   Except for the duty of continuing to hold the property as a manufacturing plant, the directions of the trust have been fully performed.   The validity or invalidity of these trusts does not affect the respective rights of the parties involved in this action.

The remaining 73 feet of the parcel was conveyed by George P. McNear to the city of Petaluma on March 15, 1900. Buildings were erected covering the entire parcel and it was leased by the city of Petaluma and its corporate trustees, acting in its behalf, to persons who proposed to carry on a shoe factory thereon.    Ever since the year 1900 the entire premises have been occupied by persons or corporations holding the same under leases from the city of Petaluma and have been continuously used by them as a shoe factory.    Either they or the city of Petaluma have paid all taxes levied on the property during the entire period.    This possession has been at all times under claim of title, hostile and adverse to the rights of plaintiffs in the property.

Whatever may be said respecting the sufficiency of the evidence to support the findings that the city of Petaluma has acquired title to the property by adverse possession, the other defense, namely, that the action is barred by the statute of limitations, is fully sustained.    The city of Petaluma, through its tenants, has been in the undisputed adverse possession of this property ever since the year 1900.    The possession of a tenant inures to the benefit of the landlord, and constitutes the possession of the landlord for the purposes of securing to him the benefits of the adverse possession so as to gain prescription thereby, and also to secure to him the benefits of the bar of the statute of limitations as against an action begun by a hostile claimant.    (2 Corpus Juris, 73; 1 Cyc. 996).    An action of this character is, with respect to the statute of limitations, an action to recover real property and the possession thereof, and is barred by five years' adverse possession of the defendant.    (*Oakland* v. *Carpentier,* 13 Cal. 540, 552; *Landregan* v. *Peppin,* 94 Cal. 465, [29 Pac. 771] ; *Goodnow* v. *Parker,* 112 Cal. 443, [44 Pac. 738] ; *Murphy* v. *Crowley,* 140 Cal. 146, [73 Pac. 820].)    The evidence that the defendant, through its tenants, has been in the exclusive, continuous, and adverse possession of the property for at least ten years prior to the beginning of the action fully supports the finding as to the bar of the statute of limitations.    This finding is sufficient to support the judgment in favor of the defendants in the action.

It may be said, however, that inasmuch as the judgment goes further and declares affirmatively that the city of Petaluma is the owner in fee simple of the premises, and that the

plaintiffs have no right, title, interest, or estate therein, and enjoins them from asserting the same, it goes beyond the scope authorized by the defense of the statute of limitations. The answer sets up the title of the defendant under the deeds above mentioned and under the claim of prescription, and prayed as affirmative relief that the defendant be adjudged the owner of the land and that the plaintiffs be declared to have no right, title, interest, or estate therein, and be enjoined from asserting any. The judgment was evidently given in response to this prayer of the answer. This adjudication as to the title renders it necessary to consider the question whether the city of Petaluma is competent to acquire title by adverse possession.

It is admitted that the adverse possession has been established. The property has not been used for public or municipal purposes, but solely as a shoe factory and by the tenants of the city. It is conceded that the city of Petaluma has no power under its charter or under the constitution and laws of the state to carry on the business of conducting a shoe factory. The precise question is this: Does the use of this property for a purpose not within the lawful powers of the city destroy the effect of the adverse possession as a basis for the acquisition of the legal title by the city?

We have reached the conclusion that a city of the fifth class may acquire title to land by prescription, notwithstanding the fact that during the period of prescription the land was devoted by it to uses not within its municipal powers. The city of Petaluma, under the Municipal Corporation Act (section 750, [Stats. 1883, p. 250]), had the power to acquire and hold land for all varieties of municipal purposes; as, for instance, public buildings, public parks, public streets, or for any other common use by the public.

The objection here made is collateral. The state of California is not a party to the action. The parties who transferred the property to the city for the unauthorized uses are not complaining. At the time of that transfer they were holding title, if at all, adversely to the present plaintiffs.

The question whether or not property in possession of a city is used for purposes within its corporate powers cannot be raised collaterally, nor at all, except by the state, or a taxpayer, or some person authorized to act in behalf of its

inhabitants.    This well-established doctrine is thus stated by
Mr. Dillon:

"Whether a municipal corporation with power to purchase
and hold real estate for certain purposes has acquired and is
holding such property for other purposes is a question which
can only be determined in a proceeding instituted at the in-
stance of the state.    If there is a capacity to purchase, the
deed to the corporation divests the estate of the grantor and
there is a complete sale; and whether the corporation, in pur-
chasing, exceeds its power is a question between it and the
state, and does not concern the vendor or others."    (3 Dillon
on Municipal Corporations, 5th ed., sec. 990.    See, also, *Na-
toma etc. Co.* v. *Clarkin,* 14 Cal. 552; 3 McQuillin on Munici-
pal Corporations, sec. 1124; 28 Cyc. 632.    As to private
corporations, see 10 Cyc. 1164; 1 Clark and Marshall on
Corporations, 554.)

It follows from this doctrine that when the tenants of the
city of Petaluma took possession under their lease, in 1900,
the state, or some person acting by its authority, was the only
person entitled in law to question the right of the city to allow
the property to be so used.    The plaintiffs could have dis-
puted the general right of possession, but not the specific right
to make the *ultra vires* use.    The city, as we have seen, had
the power to acquire property for any municipal purpose.    It
had the right to acquire it for such purpose, although it was
not immediately necessary therefor.    Its entry upon and pos-
session of the premises was an invasion of the rights of the
plaintiffs, assuming that they at that time owned the prop-
erty.    The use which the city made of the property in no
manner affected or impaired the disseisin, and it did not
excuse the plaintiffs from the necessity of asserting their title
and reclaiming the possession if they desired to do so.    It
was the possession which  disturbed, and which has finally
destroyed, their title, and not the things done on the land
during that possession.    In truth, it may be said, the use
made of the property by the city is entirely a false quantity
in the problem of determining the respective rights of pos-
session of the parties, where the question arises prior to the
expiration of the period of limitation.    If a suit had been
begun during that time by the plaintiffs against the city, the
possession of the city would have been a material fact, but the
use of the property or the operations carried on there would

have been wholly immaterial to the question of title, and material, if at all, only upon the question of damages. The proposition that private persons had no right to question the use made by the city of property in its possession was not presented to or considered by the court in *Vernon I. Co.* v. *Los Angeles,* 106 Cal. 244, [39 Pac. 762]. Whether applicable to that case or not, it is certainly applicable here, and calls for a conclusion contrary to that decision.

The argument in favor of the doctrine that the city could not acquire title by prescription to this property, under the existing circumstances, is that, since the use made of the property by those holding under the city lease was not within its corporate powers, such holding and use constituted a continuous violation of its charter and a continual exercise of powers with which it was not vested, that the acts of its officers in maintaining such possession were wholly unauthorized and unofficial, and, therefore, ineffectual in law to vest any right or title in the city.

This argument was suggested and adopted by this court in *Vernon I. Co.* v. *Los Angeles,* 106 Cal. 244, [39 Pac. 762], in support of the proposition that a city not empowered by its charter to appropriate water for public use on land outside of its limits, could not by prescription acquire the right to take water from a stream for that purpose, as against riparian owners or other appropriators. This decision is cited and relied on by plaintiffs here. The present case was transferred to the district court of appeal for the third district, and in its decision that court, disregarding the Vernon case, held that the city could acquire title to land by prescription, and that no person except the state could inquire into the use which it made of the land in its possession. That decision was vacated and the cause transferred to this court in order that we might determine whether or not the Vernon case could be distinguished or should be overruled. We are satisfied that, so far as it can be held applicable to the case at bar, it should be overruled.

The argument is based upon a proposition which has no relation to the acquisition of title by prescription and which is not essential thereto. At common law title was given to a disseisor upon the theory that his long continued, undisturbed possession should be protected by the presumption, often a pure fiction, that he originally took possession by virtue of a

grant from the true owner, and that the welfare of society
demands that, after such lapse of time, no inquiry regarding
the fact of such grant should be permitted and that the pre-
sumption should be conclusive.   Our Civil Code declares that
"Occupancy for the period prescribed by the Code of Civil
Procedure as sufficient to bar an action for the recovery of
the property confers a title thereto, denominated a title by
prescription, which is sufficient against all." (Civ. Code, sec.
1007.)   Under this provision, the presumption that there was
an ancient grant is not necessary. (*People* v. *Banning*, 167
Cal. 649, [140 Pac. 587].)   But whether under the common
law or the code, in every case where, as matter of fact, it is
the true owner's title that is taken by prescription, the adverse
claimant, with respect to the true owner, must have entered
and held wrongfully, that is, as a trespasser. (*Meyers* v.
*Farquharson*, 46 Cal. 200.)   To render his actual possession
adverse to the true owner it is essential that it should be
wrongful as to him, that is, without his authority, consent,
or permission, and against his wish or will. (*Clarke* v.
*Clarke*, 133 Cal. 671, [66 Pac. 10] ; *Oglesby* v. *Hollister*, 76
Cal. 141, [9 Am. St. Rep. 177, 18 Pac. 146].)   If it is with
such authority, consent, or permission, it does not deprive
the true owner of title, no matter how long continued.   As
to the true owner, "An adverse claimant of land is a wrong-
doer, and as such is treated by the law, until, by the lapse
of years, his acts, before tortious, are consecrated by time
and dignified as lawful." (*Packard* v. *Moss*, 68 Cal. 127,
[8 Pac. 818].)   Therefore, the fact that it is unlawful for
the disseisor to enter and maintain his actual possession not
only does not impair the efficacy of such possession as a means
of acquiring title, but it is essential thereto.   The true owner
could not, either at common law or under the code, defeat
the adverse claimant by proof that the entry or possession
was unlawful.   We can perceive no ground for a distinction
which would make the hostile possession effectual to gain title
where its unlawfulness comes from the fact that it is a tres-
pass, and which would render it ineffectual when coupled with
the circumstances, altogether collateral, that the disseisor is
a corporation which is using the property for a purpose not
within its corporate powers.   It is the hostile "occupancy"
which sets the statute of limitations in motion and begins

the period of prescription, not the unlawful use to which the property is devoted.

This conclusion is well supported by authority. The most elaborate treatment of the question is found in *Humbert* v. *Trinity Church*, 24 Wend. (N. Y.) 605, a case which, by reason of its importance, was thoroughly argued and considered. The defendant in that case was claiming title to the tract of land in controversy by virtue of the adverse possession continuing for over twenty years. Assuming that the corporation defendant had no power to hold such property, the court said:

"Nor can it be received as an objection that the possession and claim of title are by the agents or tenants of a corporation incapable by law of taking lands. It is said that the law will not do an idle thing; that by its own operation it will not cast a title upon one not competent to take as a purchaser, any more than it will carry land by descent to an alien. The answer was properly given at the bar, that the argument confounds the acquisition of a title with the cutting off of a remedy. The plaintiff is barred of his action because he has been shut out of possession by an adverse claimant for twenty years. We need only look into the bill before us to see that a corporation, though wanting legal authority to purchase, has yet the power of actual ouster in an eminent degree, and of actually enjoying land, for twenty years several times told, claiming in fee and excluding the real owner. Of such an owner, possession within twenty years can no more be predicated than if the wrongful claimant had been a natural person. The remedy is, therefore, gone."

In like manner it may be said of this case, the plaintiff is barred of his action and of his title also, because he has been shut out of possession by an adverse claimant for more than five years. The power of the claimant as a corporation to hold the property, or the use to which it devoted the property, are matters foreign to the issue and subject to inquiry only by the state. Other cases to the same effect are *New Shoreham* v. *Ball*, 14 R. I. 566; *Myers* v. *McGavock*, 39 Neb. 643, [42 Am. St. Rep. 627, 58 N. W. 522]; *Hanlon* v. *Union P. R. Co.*, 40 Neb. 61, [58 N. W. 590]; *Sherman* v. *Kane*, 86 N. Y. 57; *Eldridge* v. *Binghampton*, 120 N. Y. 312, [24 N. E. 462]. We see no reason why public corporations are not governed in this respect by the same rule as private corporations.

The fact, if it be a fact, that the state has not provided any mode whereby the right or power of the city to hold or use property for purposes not within its municipal powers may be determined does not affect the question. If the state alone may raise the question or permit it to be raised, it may also directly determine not to raise it, or do so indirectly by failing to give any person or officer power to do so in its behalf. Such fact furnishes no basis for the argument that the question can be raised collaterally by persons not interested, or not asserting their interest by an appropriate action.

The appellant cites a number of cases holding that *ultra vires* contracts purporting to be made by a city, or contracts made in its name by officers without authority to execute them, will not be enforced against the municipality, and others holding that a city is not liable in damages for the tortious acts of its officers, done in excess of the corporate powers of the city. (*Zottman* v. *San Francisco,* 20 Cal. 96, [81 Am. Dec. 96] ; *Santa Cruz etc. Co.* v. *Broderick,* 113 Cal. 628, [45 Pac. 863] ; *Foxen* v. *Santa Barbara,* 166 Cal. 77, [134 Pac. 1142].) This doctrine may be said to be well established in this state. It applies to contracts which are executory. It does not apply to the right of a city to hold property in its possession, or to the right to question its use thereof, independent of the assertion of a claim against it for money or damages, or to contracts fully executed by both parties. (1 Clark and Marshall on Corporations, sec. 212; 2 Cook on Corporations, sec. 694; 5 Thompson on Corporations, sec. 6023.)

We have hitherto in this opinion assumed that the deed of November 7, 1898, for the southwesterly 75 feet of the lot purported to pass title to the city of Petaluma. The grantees were described therein as "A. W. Horwege, C. A. Jacobsen, M. Walsh, A. Cereghino, and John Lawler, The Corporate Trustees of the city of Petaluma," and it purported to convey title to them to have and to hold, "as trustees of the city of Petaluma and the survivors of them as such trustees forever." The word "survivors" is so printed in the transcript. It may read "successors" in the document itself, as the context indicates. There may be ground for holding that its effect was to convey to the persons so named and not to the city. The point was not raised either here or in the court below. It would not benefit the plaintiffs, for, in that event, the adverse possession, in contemplation of law, would have been in such trustees, and

would be, without doubt, sufficient to divest plaintiffs' title and defeat their action as to that part of the parcel. (*Cranmer* v. *Porter,* 41 Cal. 466; *Robrecht* v. *Reid,* 114 Cal. 361, [46 Pac. 101] ; *Simson* v. *Eckstein,* 22 Cal. 593.)   We mention this point here to prevent the inference that we have positively held that the effect of said deed was to convey to the city.

Our conclusion is that, so far as plaintiffs are concerned, the court below did not err in giving judgment that defendants hold the title.

The judgment and the order denying a new trial are affirmed.

Sloss, J., Henshaw, J., Melvin, J., Lawlor, J., and Angellotti, C. J., concurred.