Mr. Justice James
delivered the opinion of the Court:
This is a suit to recover back moneys paid to the District as license fees, in pursuance of the act of the late legislative assembly, entitled: “ An act imposing a license on trades, business, and professions practiced or carried on in the District of Columbia,” approved August 23, 1871, and of the amendment thereof, approved June 20, 1872.
The plaintiff was engaged in the business of a commercial agent, selling goods by sample or catalogue, for dealers outside of the District to merchants here, to be delivered after sale by such outside dealers to the purchasers here; and for six successive years, from the year ending April 1, 1882, to the year ending April 1, 1887, inclusive, paid an annual license-tax of $200. This suit is brought because this license tax has been held to be unconstitutional.
The defendant pleaded- the Statute of Limitations, and that these payments were voluntary. The plea of limitations was sustained as to the first three payments, but verdict and judgment were had by the plaintiff in the Circuit Court as .to the second three; that is to say, for the payments made for the years ending April 1, 1885, 1886, and 1887. The defendant’s motion for a new trial was overruled by the trial justice, and defendant’s appeal from that decision now comes before us by case stated and bill of exceptions.
The plaintiff testified as a witness in his own behalf, that he took out a license, paying therefor the sum of $200, in the years 1881,1882 and 1883, respectively: “Thatin 1884 he refused to take out a license, was arrested, prosecuted, fined in the Police Court and took an appeal; that on the trial of said cause on appeal, on October 28, 1885, he was adjudged guilty, fined the sum of $200, and paid the sum to the United States Marshal for the District of Columbia; that he protested from year to year to the Commissioners of *484 the District about said license-tax because he thought the same was unjust; that on being notified about the license-tax due for the year beginning the 1st of April, 1885, that unless he paid such license he would be subjected to arrest, he took out a license for said year, paying $200 therefor; that he would not like to say whether he had been arrested for the non-payment of the license-tax for any other year than the year of 1884, but the records would show as to that. The licenses for the year 1885 and 1886 were produced, and each bore a memorandum that the tax was paid under protest. Mr. Montague, the license clerk of the District, testified that these indorsements were made by him.
Upon the close of the plaintiff’s evidence, none being offered by the defendant, both parties asked for instructions. The prayers of the plaintiff were at the time granted, but the court, after charging the jury, stated that the prayers on both sides might be considered to be refused. The appeal brings before us, therefore, only the refusal of the court to give the instructions asked by the defendant. They were as follows:
“The jury are instructed that unless they find from the evidence that the payments claimed to have been made by the plaintiff were so made by him to prevent an immediate seizure of his person or property he is not entitled to recover in this action.
“The jury are instructed that the plaintiff is entitled, to recover, if at all in this action, only for such payments alleged by him to have been made as were, in fact, made under an immediate and urgent necessity therefor, or to prevent an immediate seizure of his person or property.
“The jury are instructed that in order to entitle the plaintiff to recover in this action they must find from the evidence that the payments alleged in the declaration to have been made by him were, in fact, made in order to release his person from detention or to prevent a seizure or detention of his person, immediately threatened, under circum *485 stances indicating a bona fide intention on the part of the person making such threat to carry the same into immediate execution; and if the jury find from the evidence that any of said alleged payments were made by the plaintiff under other conditions than as hereinbefore indicated, as under a mere general wrarning or belief that he must so pay or undergo prosecution for not so doing, he is not entitled to recover in this action for such payment.”
It was insisted, by counsel for defendant, that his prayers embodied precisely the rule laid down by the Supreme Court of the United States in Railroad vs. Commissioners, 98 U. S., 543, 544. In that case the court, referring to their decision in 97 U. S., said:
“We had occasion to consider the same general subject at the last term in Lambourn vs. County Commissioners,97 U. S., 181, which came up in a certificate of division from the Circuit Court for the district of Kansas. As that was a case from Kansas, we followed the rule adopted by the circuits of that State, which is thus stated in Wabaunsee County vs. Walker, 8 Kans., 431: 'Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary and cannot be recovered back. And the fact that the party at the time of making the payment files a written protest does not make the payment involuntary.’ This, as we understand it, is a correct statement of the rule of the common law. There are, no doubt, cases to be found in which the language of the court, if separated from the facts of the particular case under consideration, would seem to imply that a protest alone was sufficient to show that the payment was not voluntary; but on examination it will be found that the protest was used to give effect to the other attending circumstances.”
*486 As a matter of fact the effect of the rule just quoted was materially altered by the manner in which it was divided into separate propositions in the defendant’s prayers. Under the rule, as stated by Chief Justice Waite, any one of several predicaments might show that a payment was involuntary; while, as directed by these prayers, the rule would make the character of the payment depend upon the presence;of one particular circumstance. For this reason, if there had been no other, it would not have been proper to give these instructions as asked.
But we do not rest our decision on that ground. The law on this question has been differently and better stated in later decisions of the Supreme Court, and it is with reference to these that we hold that the instructions asked by the defendant were properly refused.
It is not easy to do justice, to this extremely interesting-development of principle without an examination of the cases referred to. The first of the series is United States vs. Lawson, 101 U. S., 164. The act of 26th of February, 1867, 14 Stat., 410, abolishing a former collection district in Maryland, and forming from a former portion thereof a new district, provided that the collector should receive an annual salary of $1,200. Lawson held the office of collector from April 19, 1867, until April 1, 1875. On July 18, 1867, two months after his appointment, the Commissioner of Customs required him, in writing, to account for all fees received by him as such. He accordingly thereafter paid them into the Treasury. Lawson brought suit in the Court of Claims to recover these fees, and on appeal to the Supreme Court it was held, (1) that in addition to his salary, he was entitled to the fees and emoluments allowed to such officers by preexisting legislation ; in other words, to the fees which he had paid into the Treasury; (2) that, having paid them into the Treasury pursuant to a peremptory order of his superior officer, he was not thereby precluded from recovering them in a suit against the United States.
*487 Mr. Justice Clifford, delivering the opinion of the court, said : “ It is contended by the United States that payments were voluntarily made, and that the money cannot be recovered back. Confessedly, the order was official and peremptory, and under such circumstances it may well be inferred that the party felt that if he refused to obey, the refusal would cost him his commission. Had he refused to comply with the order, or entered a protest, his act might have been regarded as contumaceous, and have proved injurious in its consequences to the incumbent of the office as if he had declined to discharge the ordinary duties of the collector. Viewed in the light of the attending circumstances, and especially of the fact that the order came from the Commissioner of the Customs, to whom he was.immediately responsible, we cannot hold that the payments were voluntary within the meaning of the judicial rule which, in consequence of the payment, deny to the party making the same, the right to recover it back. Beyond all question the money was wrongfully exacted, and it is equally certain that in equity and good conscience it ought to be returned. * * * It was demanded of him by his official superior, and the act of Congress exposed him to a penalty if he refused to comply. 14 Stat., 187; Bev. Stat., Sec. 3619.”
In the case of United States vs. Ellsworth, 101 U. S., 170, immediately following, a collector had paid into the Treasury certain fees to which he was entitled. Again the court said : “You will bear in mind, said the Commissioner, that all moneys of every description, not received by warrant on the Treasury, must be actually deposited.” Had he added, “ If you fail to comply, the law must be enforced,” his meaning could not be misunderstood, as the Act of Congress provides that the gross amount of all moneys received from whatever source for the use of the United States, with an exception' immaterial in this case, shall be paid by the officer or agent receiving the same into the Treasury at as early a day as practicable, without any abatement, &c. Bev. *488 Stat., Sec. 3617. Penalties are prescribed for non-compliance with that requirement as follows: “Every officer or agent who neglects or refuses to comply with that provision shall be subject to be removed from office, and to forfeit any part or share of the moneys withheld, to which he might otherwise be entitled.” Rev. Stat., Sec. 3619.
. “ Viewed in the light of these penal provisions, the payments in question made under the peremptory order of the Commissioner, cannot be regarded as voluntary in the'sense' that the party making them is thereby precluded from maintaining an action to recover back so much of the money paid as he was entitled to retain. Call it mistake of law or mistake of fact, the principles of equity forbid the United States to withhold the same from the rightful owner.”
It is very clear that these cases went beyond the rule laid down in Railroad vs. Commissioners, 98 U. S., 543, 544. The collector’s office was not his “property,” and he could not well be said to have made the payments under circumstances of “immediate and urgent necessity.” Nor was it an essential and differentiating circumstance that the Commissioner of Customs was the superior officer of the party making the payment. The principle of the decision was that he was dealing with one who could cause, and was likely to cause, him serious loss if he refused to pay. It was for the reason that he parted with his money when he was not free to choose that the payment was not voluntary in contemplation of law.
The next in this series of cases is Swift Company vs. United States, 111 U. S., 22. It is convenient to adopt the statement of this case made by Mr. Justice Bradley in Roberts vs. Prank Brother’s Company, decided at the last term of the court (October, 1889), and not yet reported in the books. “In Swift Company vs. United States, the plaintiffs, who were manufacturers of matches, and furnished their own dies and stamps used by them, and were thereby entitled to a commission of 10 per cent, on the price *489 of such stamps, accepted for a long period their commissions in stamps (which, of course, were worth to them only 90 cents on the dollar), and they did this because the Treasury Department would pay in no other manner. We held that the apprehension of being stopped in their business by non-compliance with the Treasury regulations was a sufficient, moral duress to make their payments involuntary.” Mr. Justice Matthews, delivering the opinion of the court, said: “The question is whether the receipts, agreements, accounts, and settlements made in pursuance of that demand, of necessity were voluntary.in such sense as to preclude the appellant from subsequently insisting on its statutory right. We cannot hesitate to answer the question in the negative. The parties were not on equal terms. The appellant had no choice. The only alternative was to submit to an illegal exaction, or discontinue its business. It was in the power of the officers of the law, and could only do 'as they required. Money paid, or rather value parted with under such pressure, has never been regarded as a voluntary act within the meaning of the maxim volenti non fit injuria.” Mr. Justice Bradley then added: “In our judgment the payment of money to an official, as in the present case, to avoid an onerous penalty, though the imposition of that penalty might have been illegal, was sufficient to make the payment an involuntary one.”
It is manifest that these later cases relieve the question of voluntary and involuntary action from the artificial tests formerly applied, and that they recognize more distinctly the ordinary considerations which control human conduct. To say that a man who pays money must be held to have acted freely unless he did it under the pressure of immediate and urgent necessity, suggests a high standard of pluck and manhood, but in transactions with the Government it is not a fair or reasonable test. When a demand is made by an official, known to have at his back, even though he may not threaten to use them, the penalties of the law, the individual *490 citizen does not stand on an equal footing in the dealing. Accordingly, great weight was given in Lawson’s Case to the fact that he saw in the distance a peril which menaced, not his existing property, but his future career and interests. It is useful, no doubt, to employ standards in determining the nature of conduct, but after all this question of voluntary or involuntary payment is one of fact, and should be determined like other questions of fact, and not by arbitrary rule.
In the light of the later decisions of the Supreme Court, we think that the trial justice was right in declining to give the instructions in the form asked by the defendant, but that he might well have declined to give them in the very form recognized in the case referred to by the defendant—Railroad vs. Commissioners, 98 U. S., 541—provided he stated the rule correctly in his charge to the jury. And this, we think, he did.
The decision of the trial justice in overruling the motion for a new trial is, therefore, affirmed.