[Civ. No. 3616. First Appellate District, Division One.—January 28, 1921.]

GEORGE J. CHAMBERS, Respondent, v. THE SECURITY COMMERCIAL AND SAVINGS BANK (a Corporation), Appellant.

[1] CORPORATIONS — LEASE TO BANKING CORPORATION — ULTRA VIRES USE—LIABILITY FOR RENT.—A banking corporation has the power to lease real property, or to take an assignment of a lease to real property and agree to pay the rent therefor, for certain uses and purposes, and the acts of its officials in using leased premises for some purpose outside the scope of the powers of a banking corporation will not render such lease void, or release the banking corporation from its obligation to pay rent.

[2] ID. — USURPATION OF CORPORATE POWERS — QUO WARRANTO. — A banking corporation cannot put leased premises to uses which are beyond its charter or statutory powers, and then complain of its own usurpation of power in a case wherein it has received the full benefit of its unauthorized act. It is for the state of California to restrain the unauthorized extension of corporate powers in a quo warranto proceeding instituted for that purpose.

APPEAL from a judgment of the Superior Court of San Diego County. W. A. Sloane, Judge. Affirmed.

The facts are stated in the opinion of the court.

Sweet, Stearns & Forward for Appellant.

Hunsaker, Britt & Cosgrove and Crouch & Chambers for Respondent.

RICHARDS, J.—This is an appeal from a judgment in favor of the plaintiff in an action instituted by him against the defendant for the recovery of certain premises leased by him to the defendant's predecessor and which the said defendant was alleged to be unlawfully holding over after default in the payment of the rent due and payable under

2. Ratification of unauthorized contract entered into by officer of corporation, by acceptance and retention of benefits, note, 7 A. L. R. 1446.

the terms of said lease, and also for the recovery of the amount of rent due.

The case was tried before a jury which rendered a general verdict in the plaintiff's favor and also a special verdict upon certain issues in the case.

The facts of the case upon which the questions presented on this appeal arise are practically undisputed, and are briefly as follows: The plaintiff on the twelfth day of March, 1912, was the owner of the real estate in question which was at that time unimproved. On said date he executed a written lease of said real estate to three certain individuals—Fabre, Richardson, and Kerns—for the term of five years, commencing on April 1, 1912. In May, 1913, said lessees, with the lessor's consent, assigned and transferred their said lease to the Blochman Banking Company, a copartnership composed of two members—L. A. Blochman and J. A. Heap—who expressly agreed to pay all rent due under said lease after the date of said assignment. In August, 1913, the said partnership became incorporated under the name of Blochman Commercial and Savings Bank, to which said corporation the partnership transferred all of its assets, and the said copartners became as the incorporators of said corporation the owners of practically its entire issue of capital stock. The lessor also consented to the transfer of said lease to said banking corporation. In July, 1914, the name of said Blochman Commercial and Savings Bank was changed to "Security Commercial and Savings Bank," and the latter thereafter continued to hold said real estate under said lease and to transact business as a banking corporation under said name. During the time that the said original lessees held said real estate under their lease they had erected certain structures and had engaged in conducting a moving picture business upon the said premises, which was continued to be conducted after the organization of said banking corporation and the transfer to it of said lease. During the period from January 1, 1915, to December 31, 1915, while the defendant as such corporation was operating and conducting said moving picture business upon said premises, they failed to pay the rent due and payable under the terms of said lease to said plaintiff, who at the expiration of said period and after

giving the proper notices commenced this action in unlawful detainer.

In its answer filed herein the defendant undertook to deny that it was the transferee of said lease or that it was unlawfully holding said premises thereunder, predicating its said denial apparently upon the proposition that as a banking corporation of limited powers under its charter and also under the banking act it had no authority to conduct or operate a moving picture business, that the action of its officials in taking over said premises while the same was devoted to the conduct of said business was an act *ultra vires,* and hence that it was not liable for the rent due to plaintiff under said lease. The possession of the premises was apparently surrendered to the plaintiff before the case came to trial, and the cause was submitted to the jury upon the issue of the amount of rent due and also upon the questions involved in the particular issues upon which a special verdict was requested.

There were three of these, the first being as to whether the assignment of the lease in question to the Blochman Banking Company was an actual sale and transfer thereof or only as security for a loan; second, whether at the time of the plaintiff's consent to said assignment he believed that said banking company was the real owner of said lease, and also whether he acquiesced in the possession of the premises by said Blochman Banking Company under such belief; third, whether the defendant during the period from January 1, 1915, to December 31, 1915, was operating and conducting said moving picture business on said premises on its own behalf.

The jury returned a general verdict in the plaintiff's favor in the sum of six thousand dollars, the total amount of the unpaid rent due under the lease, and as to the aforesaid special issues answered each of them affirmatively. Upon the coming in of this verdict the defendant moved the court for a judgment in its favor based upon the findings of the jury upon these special issues, which motion was denied by the court. The judgment followed, from which this appeal has been taken.

[1] The first and, in fact, the controlling contention of the appellant herein is its claim foreshadowed by its answer herein, that the act of its officials in taking over said lease

while the said premises were being used for the operation
and conduct of a moving picture business was an act *ultra
vires,* and that the occupation and conduct of said premises
by said defendant thereunder for such purposes was also
*ultra vires,* and hence that no obligation or liability arose
or attached to said defendant under said lease. This con-
tention on the part of the appellant is sought to be sup-
ported by the citation of numerous authorities, setting forth
the limited powers of banking corporations under their char-
ters and under the terms of the Banking Act under which
this particular institution was organized. It is not necessary
herein, in our opinion, to in any wise disagree with this
line of authorities or to otherwise comment thereon for the
reason, which seems to us obvious, that the appellant's
asserted position in respect to this contention, and its citation
of and dependence upon these authorities, spring from a
complete misconception of the application of the doctrine of
*ultra vires* to the facts of the case at bar in this: that the
appellant entirely overlooks the distinction between the lease
of the premises in question and the purposes to which the
premises are devoted by the lessees or their successors in
occupancy under such lease. It is this precise distinction
which differentiates all the cases cited by the appellant in
its effort to apply the doctrine of *ultra vires* from the case
at bar and from the cases cited by the respondent to which
we shall hereafter refer. It could not for a moment be con-
tended that this banking corporation is not empowered
under its charter and under the provisions of the Banking
Act in this state to take and hold leases of real property.
(Stats. 1913, p. 158; Civ. Code, sec. 354.) This being so,
the act of the defendant in taking over this lease would
not have been *ultra vires,* since it might upon acquiring
the same have proceeded to devote the premises described
to uses to which it would have been entitled to put the same
under the provisions of its charter and of the banking act.
That it did not do this did not render its act in acquiring
its leasehold interest in said premises *ultra vires.* (*Bissell
v. Michigan Southern R. R. Co.,* 22 N. Y. 262.) In the
instant case the lease in question was made to the original
lessees, who unquestionably were entitled to establish and
conduct any lawful business which they saw fit upon the
premises. These original lessees transferred this lease to the

Blochman Banking Company, a copartnership, which also had the undoubted right to continue to use the premises for the conduct of the business to which it was then being devoted. This copartnership resolved itself into a banking corporation, of which its two members became the owners of practically all the capital stock, and under, the name of said corporation took over all of the assets of the copartnership, including this lease. That this leasehold interest in these premises so acquired by this corporation—which after all is said was merely the former ownership thereof under a corporate name—was taken over in the ordinary course of business seems too plain for argument, and it would seem to be equally clear that this plaintiff, by the mere formal act of consenting to this formal transfer of his perfectly good and valid lease while in the hands of the copartnership, could not be held to have consented away his right to enforce the same because the officials and controlling forces of such corporation continued to put the real estate described in said lease to uses which under the name and form of a copartnership they were entitled to do, but which under the name and form of a banking corporation might be beyond the limited scope of the corporate powers of such corporation. To hold otherwise would put the lessor of real estate at the mercy of their lessees, who by the simple process of casting themselves into the form of a banking corporation, and using the lease for some purpose outside of the scope of the powers of that sort of corporation, could thus avoid their obligation to pay the rent due according to the obligations of their lease. Under section 354, subdivision 4, of the Civil Code, as well as under the Banking Act above cited, this defendant had the power to take and hold this lease for some uses and purposes at least, and this plaintiff, as lessor, had the right to presume that the defendant in taking over said lease was acquiring the same for purposes authorized by its charter and by said Banking Act, and that whatever proper uses the property was being put to under the former ownership of said lease would, if improper or *ultra vires* under the corporate organization, be presently discontinued. (1 Morse on Banks and Banking, 5th ed., sec. 56.) In the early case of *Miners' Ditch Co.* v. *Zellerbach*, 37 Cal. 543, [99 Am. Dec. 30], the court, quoting from the decision of

*Bissell* v. *Michigan etc. R. R. Co., supra,* says: "An incorporated bank may purchase land, having power to do so for a banking house, but actually intending to speculate in the transaction. This is also *ultra vires,* but can the want of authority be interposed in repudiation of a just obligation to pay for the same land, the vendor not being *in pari delicto.* Such a doctrine is not only shocking to the reason and conscience of mankind, but it goes far beyond the law in regard to illegal contracts of private individuals."

In the recent case of *James Eva Estate* v. *Mecca Co.,* 40 Cal. App. 515, [181 Pac. 415], it was held that where a corporation had power to do an act for some purposes, and had received and enjoyed the benefit derived from doing the act, it would be estopped to present the plea of *ultra vires* against the enforcement of the obligation it assumed in the performance of the act.

For the foregoing reasons and upon the authorities cited in support thereof, we conclude that there is no merit in the appellant's contention that it was entitled to plead that the lease upon which the plaintiff sought to recover herein was void because the defendant, in taking over the same, was acting beyond the scope of its powers as a banking corporation. Many more authorities might be cited in support of this conclusion, but we do not deem it necessary to burden the record with further citations to support a proposition which seems so thoroughly in accord with justice.

[2] There is, however, another answer to the appellant's contention which would seem to be complete. It bears upon the action of the defendant in putting the premises in question to uses which were, according to its claim, beyond its charter or statutory powers. Assuming this claim to be correct, it does not follow that it lies within the power of the defendant to complain of its own usurpation of power in a case wherein it has received the full benefit of its unauthorized act. It is for the state of California to restrain the defendant's unauthorized extension of corporate powers in a *quo warranto* proceeding instituted for that purpose. (*Natoma W. & M. Co.* v. *Clarkin,* 14 Cal. 544; *Becket* v. *City of Petaluma,* 171 Cal. 309, [153 Pac. 20]; *McCann* v. *Children's Home Society,* 176 Cal. 359, [168 Pac. 355].)

The foregoing answers to the main contention of the appellant in this case also answer the appellant's several other contentions as to alleged errors of the trial court in its instructions to the jury, since all of these are predicated upon the appellant's assumption that its act in taking and holding said lease, as well as in operating under the same, was *ultra vires*, and that it was entitled to urge this plea against the plaintiff and in the instant case. It is not necessary, therefore, to advert to these alleged errors in further detail.

Judgment affirmed.

Kerrigan, J., and Seawell, P. J., *pro tem.*, concurred.