[Civ. No. 1900.    Third Appellate District.—January 21, 1919.]

PHEBE M. RIDEOUT, Respondent, v. CHARLES COVILLAUD et al., Defendants; MARY HELEN McLEAN et al., Appellants.

ADVERSE POSSESSION—TITLE BASED ON WRITTEN INSTRUMENT—FINDINGS SUPPORTED BY EVIDENCE.—In this action to quiet title, the evidence discloses all the requisites of section 323 and of the proviso of section 325 of the Code of Civil Procedure essential to the establishment by the plaintiff of title to land by adverse possession based upon a written instrument.

ID.—TITLE OF DEFENDANT BARRED.—The evidence also shows that the title claimed by defendants was lost by the bar of section 318 of the Code of Civil Procedure long prior to the commencement of the action.

ID.—LAND USUALLY CULTIVATED OR IMPROVED—MEANING OF TERM.—The requirement of the statute that the land be usually cultivated or improved means that it should be cultivated or improved in the manner or to the extent usual in the case of similar property. If so improved, it is not necessary that it should be either cultivated or inclosed.

APPEAL from a judgment of the Superior Court of Yuba County.   Eugene G. McDaniel, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Kipp & Kipp  for Appellants.

W. H. Carlin  for Respondent.

HART, J.—The action was brought to quiet title to one-half of a certain block of land in the city of Marysville.

In addition to the seven appealing defendants, a large number of persons and the city of Marysville were joined as defendants, some of whom appeared and filed disclaimers; the others, who were served with summons by publication, made no appearance and their defaults were duly entered.

The land in controversy was a portion of a Spanish land grant to John A. Sutter, which grant was confirmed by a patent issued to him by the United States. The property was platted in 1850 and divided into streets and lots. The appeal is concerned only with lot 4, there being no contest as to the remainder of the half block.

On January 18, 1850, John A. Sutter conveyed the land included within said grant to Charles Covillaud, Jose Manuel Ramirez, Theodore Sicard and John Sampson, and, on February 19th of the same year, Theodore Sicard conveyed said land to Gabriel A. Swezy and Robert B. Buchanan. Other deeds introduced in evidence it will not be necessary to detail. Robert B. Buchanan died in 1855, his estate was administered and, on the 2d of February, 1858, a final decree of distribution conveyed all his right, title, and interest in and to said lot 4 to his widow, Minerva E. Haun, and his daughter, Minna E. Buchanan, share and share alike. All the appellants except Mary Helen McLean are descendants of Robert B. Buchanan. The interest claimed by Mary Helen McLean came to her from her mother, Mary E. McLean, who acquired the interest in 1860.

The complaint was filed July 20, 1916. Plaintiff claims title by reason of the actual, exclusive, and adverse possession of herself and her predecessors in interest continuously for more than twenty years and the payment by her and her predecessors in interest of all taxes levied on the property during the five years preceding the filing of the complaint.

Plaintiff offered in evidence a tax deed, dated May 15, 1880, purporting to convey to J. H. Krause said lot 4. It was stated by counsel that the offer was "for the purpose of laying a foundation for color of title, to be afterward supplemented by the actual occupation and possession and improvement of the property." Over objection of the defendants the court admitted the deed for the purpose stated. It is not contended by plaintiff that this deed conveyed title. On May 20,

1880, J. H. Krause conveyed said lot to P. C. Slattery, who thereafter died and his interest descended to his widow, Mary Jane Slattery. The lot was conveyed by her to the city of Marysville, in January, 1902, and, on February 20, 1904, the city of Marysville conveyed it to N. D. Rideout, who died in 1908, and his interest became vested in his widow, the plaintiff in this action.

The testimony showed that, from 1890 to 1898, inclusive, said lot 4 was assessed to P. C. Slattery, and the taxes marked "paid" on the assessment-roll each and every year before they became delinquent. For the years 1899, 1900, and 1901 said lot was assessed to the estate of P. C. Slattery and the taxes similarly marked "paid." For the years 1902 and 1903 (during which time the lot was owned by the city of Marysville) there was no assessment. From 1904 to the date of the trial (February 27, 1917), the property was assessed in succession to N. D. Rideout, the estate of N. D. Rideout and Phebe M. Rideout, and the taxes were paid.

Lot 4 and the remainder of the half block (lots 1, 2, and 3) originally constituted a slough. In 1898 and 1899 the city of Marysville filled in the streets and alleys, leaving the half block practically a water hole, and the board of health later condemned the property as a nuisance. In 1901 the city filled lots 1, 2, and 3 with sand up to the grade of the streets. Lot 4 was used as a dump, brush, tree trimmings, and stable manure being deposited thereon. Mrs. Slattery partially filled the lot and the city allowed her $85 or one hundred dollars for that work, and, in 1901, 1902, or 1903, the city filled the lot with sand to the depth of three or four feet, it was brought up to grade and converted from a sump or cesspool into a residence lot. In 1914, while the lot belonged to Mrs. Rideout, there was further filling and grading of the half block at a cost of $2,669, the east end of lot 4 being the lowest portion. In 1916, and prior thereto, sidewalks were constructed along the whole of the half block on the west side and there is a dirt sidewalk along the north line of lot 4. At the date of the trial the lot had not been completely filled in.

To our minds it is very clear that nothing further than the reproduction of the foregoing statement is required to be said herein to show that the decree quieting plaintiff's title to the parcel of land in controversy is impregnably founded and, therefore, beyond impeachment. While the plaintiff does not

rely upon and has not shown a good record title, it is nevertheless unquestionably true that from May 20, 1880, at which time one Krause, having previously obtained a purported but defective tax title to the lot, conveyed the property to P. C. Slattery, down to the time of the commencement of the action —July 20, 1916—the plaintiff and her predecessors in interest openly and notoriously held possession of the lot under color of title, during which period of time, except when the title was in the city of Marysville, they paid all the taxes thereon and improved the same. It is to be added that during that period of time, so far as the record discloses, none of the appealing defendants or their predecessors ever made any effort judicially to assert their title thereto, or, so far as we know, made any other claim to title until this action was brought.

Section 323 of the Code of Civil Procedure provides that, to constitute an adverse possession by any person claiming a title founded on a written instrument, land is deemed to have been possessed and occupied when it has been usually cultivated or improved.

In view of the undisputed evidence, of which the above statement involves a correct epitome, it is mere supererogation to say that the plaintiff's case fully meets the requisites prescribed by said section of adverse possession founded on an instrument in writing. It is true that the lot was not shown to have been inclosed or "cultivated," but it is undisputed that it had been improved by the plaintiff and her predecessors, and this was sufficient under said section. (*Gray* v. *Walker*, 157 Cal. 381, 385, [108 Pac. 278].) In that case, it is said by Mr. Justice Sloss: "The requirement of the statute that the land be 'usually cultivated or improved' means that it should be cultivated or improved in the manner or to the extent usual in the case of similar property. (*Allen* v. *McKay*, 120 Cal. 332, [52 Pac. 828].) If so improved, it is not necessary that it should be either cultivated or inclosed. (*Daniels* v. *Gualala M. Co.*, 77 Cal. 300, [19 Pac. 519].)"

Appellants, however, attack the finding that "at the date of the commencement of this action plaintiff by herself and her predecessors in interest had been, she ever since has been, and now is, in the actual, exclusive, and adverse possession of all of said real property herein described continuously for more than twenty years prior and up to the filing of the com-

plaint in this action, claiming during all of said times to own the same in fee against the whole world.''

We think, as above stated, that there is no ground for successfully disputing the proposition that the evidence shows that for nearly forty years the plaintiff and her predecessors in interest have been in unchallenged possession and occupancy of the property, but conceding that the evidence does not support the finding of twenty years of possession and occupancy by the plaintiff and her predecessors, it cannot for a moment be doubted that such possession and occupancy were shown to have been had for over a period of five years, during which time none of the appealing defendants or their predecessors in interest or grantors made any claim of title or right of possession to the lot. While there is no specific finding that the lot was possessed and occupied by the plaintiff for a period of five years, the finding that it was so possessed and occupied for the period of more than twenty years is sufficient to support the judgment, there being, as stated, evidence clearly supporting a finding of five years' adverse possession. The lesser period is obviously included in the greater period specifically found.

Thus it is very clear that the evidence discloses the fulfillment of all the requisites of section 323 and of the proviso of section 325 of the Code of Civil Procedure essential to the establishment of title to land by adverse possession based upon a written instrument.

It is further to be suggested that, so far as we are advised by the present record, the defendants, long prior to the commencement of this action, had lost their right of action to recover the property or the possession thereof by the bar of the statute (Code Civ. Proc., sec. 318; *Beckett* v. *City of Petaluma*, 171 Cal. 309, [153 Pac. 20]), and in such case, of course, their claim of title as set up in their answer in resistance to the like claim of plaintiff is likewise legally nonenforceable.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.