## DAY v. STEELE et al.

No. 7035. Decided September 5, 1947. (184 P. 2d 216.)

See 2 C. J. S. Adverse possession, Sec. 24. Necessity of actual possession to give title by adverse possession under invalid tax title, see note 22 A. L. R. 550. See, also, 1 Am. Jur. 865.

*C. Nelson Day,* of Salt Lake City, for appellant.

*Dudley D. Crafts* and *Eldon A. Eliason,* both af Delta, for respondents.

WADE, Justice.

Plaintiff brought this suit to quiet title to some land in Delta, Utah, to which the defendant Millard County disclaimed any interest. From a judgment quieting title in the answering defendants he appeals.

Plaintiff, the appellant herein, had bought vacant lots situated in Delta City, Millard County, from the State Banking Commissioner acting for the insolvent Delta State Bank. At the time appellant purchased this property the general taxes for the years 1931 to 1934, inclusive, were delinquent. The property was sold to Millard County in 1936 for non-payment of these taxes and Millard County subsequently sold this land to respondents herein. Respondents in their answer disclaimed any interest in the east three

feet of these lots but claimed ownership of the remainder by virtue of the deed from Millard County and by adverse possession.

The court found that the deed which respondents received from Millard County was invalid as a conveyance of title because the first publication of notice of the May sale was made only 23 days before the date fixed for sale, but found that it was sufficient upon which to base a color of title and that they had continuously been in actual, open, peaceful and notorious possession of the property involved herein for a period of more than seven years preceding the bringing of this action and that during all that time they have paid all the taxes lawfully levied upon it, and were holding it adversely to appellant herein and all the world.

Appellant assigns as errors the court's finding that the evidence sustained respondents' claim that they were in adverse possession of the land in question for a period of more than seven years and its conclusion that title should be quieted in them.

From the evidence introduced at the trial it appears that respondents after buying the property from the county depended upon the following acts of their agent John E. Steele, to prove that they took possession of said land and were holding it openly and adversely under a claim of right as against appellant and all the world: (1) That they paid all the lawfully levied taxes. (2) That in the spring of 1937 their agent with the help of another person surveyed the lines of this property and put tie posts at its corners. (3) That for a few days in 1938 he grubbed greasewood brush from the land and also allowed someone to place a commercial sign at no rental on the southeast corner of lots 4 and 5 of this property and had the city put a water meter in the street in front of the property so it could be connected when needed. (4) That in 1939 their agent replaced some of the corner posts which had been destroyed by campers; granted permission to a carnival to use a small part of the property for about a week, also at no rental; and allowed persons to haul dirt on the property to fill up excavations

on it. (5) In 1941 a friend did some leveling of a part of the property and this same agent did some more grubbing of weeds for about a week. This agent also spent a few days each year trying to eradicate a weed called "white top." Their agent also allowed a friend who owned property east of this land to store junk on about thirty feet of this land also at no rental. (6) That in 1946 a small frame building was moved onto the property by this agent. There was also evidence that this agent walked over this property many times as did others and that it was often used for camping grounds by strangers without anyone's permission. The agent also testified that it had been their intention to build cabins on the property and some blueprints had been made but that nothing more had been done towards that project.

Are the above mentioned acts sufficient to establish respondents' claim of adverse possession under color of title?

The property is located in the business district of Delta City. It consists of vacant lots except for the small building moved onto it in 1946. It is covered with greasewood brush and is irregularly depressed from about one to three feet below the street level. What filling in was done by the few truckloads of dirt hauled onto with permission of respondents' agent did not materially alter the appearance of these lots. The land appears to be in the same condition now as it was when respondents first claim to have taken possession.

Section 104-2-8, U. C. A. 1943, provides that:

"Whenever it appears that the occupant, or those under whom he claims, entered into possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree or judgment, or of some part of the property under such claim, for seven years, the property so included is deemed to have been held adversely, except that when the property so included consists of a tract divided into lots, the possession of one lot is not deemed a possession of any other lot of the same tract."

And Sec. 104-2-9, U. C. A. 1943, prescribes what constitutes adverse possession under a written instrument. This section provides that:

"For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument or a judgment or decree, land is deemed to have been possessed and occupied in the following cases:

"(1)    Where it has been usually cultivated or improved.

"(2)    Where it has been protected by a substantial enclosure.

"(3)    Where, although not enclosed, it has been used for the supply of fuel, or of fencing timber for the purposes of husbandry, or for pasturage or for the ordinary use of the occupant.

"(4)    Where a known farm or single lot has been partly improved, the portion of such farm or lot that may have been left not cleared or not inclosed according to the usual course and custom of the adjoining country, [county] is deemed to have been occupied for the same length of time as the part improved and cultivated."

It can readily be seen from the foregoing statutes that respondents in order to prevail must have proved that they were in actual possession of the land and that their possession was continued and open. What type of acts are deemed occupation or possession for this purpose are delineated in Sec. 104-2-9, quoted above. Since there was no evidence that the property was protected by a substantial enclosure as provided in subsection (2) thereof, nor that it was a known farm or single lot which had been partly improved or cultivated and according to the custom of the adjoining country the remainder was not so improved or cultivated, so that the possession of part would inure to the whole claimed as provided in subsection (4), the respondents must have proved their possession by complying with the provisions of either subsection (1) or (3) or both of those subsections, if the court did not err.

Subsection (1) prescribes that when the property has been usually improved or cultivated such acts are deemed to be adverse possession. The lands involved herein being located in a business district and not of the kind or nature suitable for cultivation we have to determine here whether respondents proved that it had been "usually improved."

The Supreme Court of California in the case of *Gray* v.

*Walker,* 157 Cal. 381, 108 P. 278, 279, in determining the meaning of the phrase "usually cultivated or improved" under a statute similar to our Sec. 104-2-11, U. C. A. 1943, where the adverse possession was not claimed under a written instrument, said that it

"* * * means that it should be cultivated or improved in the manner or to the extent usual in the case of similar property. * * *";

and in the case of *Rideout* v. *Covillaud,* 39 Cal. App. 417, 179 P. 211, the District Court of Appeal in defining this phrase where the possession was claimed under a written instrument, cited the above case in determining that a leveling of dump ground was a usual improvement sufficient to prove possession under a code provision similar to subsection (1) of Sec. 104-2-9, U. C. A. 1943. See also *Trask* v. *Success Mining Co.,* 28 Idaho 483, 155 P. 288.

A reading of the above cases discloses that where the court held the property was "usually improved" the changes made were substantial and of such a type as were suitable for the use to which the particular type of land was fitted. The changes were such that they would apprise anyone that the land was being used in the manner in which an owner would so use it. The changes were substantial and of a permanent nature such as remained visible for the duration of the statutory period and not temporary acts or such as could be mistaken for mere occasional trespasses. In the instant case although there was a slight leveling of a small portion of the property claimed by adverse possession it was not done to an extent that was noticeable. The weeding was done in such a manner that the weeds soon flourished again, and the dumping of the few loads of dirt on the grounds did not change its appearance or enhance its usefulness as property upon which a business could be located. Under such circumstances we are of the opinion that the property was not improved in the manner usual to improve that kind and character of land for the uses to which it could be put. It is true a building was placed on the property a few months before ap-

pellant instituted this suit, but even though this is clearly an "improvement," it is apparent that it has not been there a sufficient length of time, nor that preliminary work for its placement had been done for the statutory period.

Did respondents prove possession under subsection (3)? There was no evidence that the land was used for the supply of fuel, or of fencing timber for the purposes of husbandry or for pasturage. If they are to prevail under the provisions of this subsection it must be because they have proved that they occupied it for their ordinary use.

"'Ordinary use of occupant,' requisite to adverse possession, means use appropriate to location and character of property." Vol. 30, Words and Phrases, Perm. Ed., p. 278, citing *Posey* v. *Bay Point Realty Co.*, 214 Cal. 708, 7 P. 2d 1020.

In view of the fact that the property involved in this case lies within the business section of Delta City and is unimproved vacant lots on the west of which is a service station and on the east a motor company which used part of its property on which to store junk, it might be that the acts of respondents in allowing this company to store part of its junk on the property they claimed, and in granting a carnival the use of part of the land and in allowing a commercial sign to be placed on it were uses appropriate to the character and location of this land were it not for the fact that these acts were not of unequivocal character indicating a claim of ownership, since the evidence discloses that not only was junk stored by a third party on the land in question but that that same party also stored junk on other vacant lots in the vicinity of his motor company. This was true of the carnival also, It not only used part of the land involved in this action but also used other vacant lots in the vicinity owned by persons not parties to this action. Not only from the nature of the use were the acts not calculated to give notice that someone was claiming to use the land as a matter of right by reason of ownership, but the uses did not continue for the statutory length of time. Rather the length and type of use was more in the nature of trespassers using vacant

lots for dumping and other purposes. Many persons used these lots as a shortcut from one street to another. The lots were also used as a camping ground by strangers without permission from anyone. Under such conditions we are of the opinion that respondents have failed to prove that their possession was continuous, hostile, open, notorious and exclusive, and of such a character as to give notice to the owner and the world that it was being held adversely and under claim of ownership. See *D. H. Perry Estate v. Ford,* 46 Utah 436, 151 P. 59, in which this court held that the use of a strip of land to leave wagons on and to throw refuse, even though coupled with the payment of taxes, was not such a use as would give notice of an adverse holding. We are of the opinion therefore that the court erred in holding that respondents had actual adverse possession of the land for a period of seven years prior to the commencement of this suit.

Respondents also argue that appellant cannot prevail in this action because he has never been in either actual or constructive possession of the land. We find no merit to this contention. The record discloses that respondents stipulated that the land was conveyed to appellant by the Delta State Bank, an insolvent bank, through the State Banking Commissioner and that the title to the property had previously been quieted in the State Banking Commissioner on behalf of the Delta State Bank and its creditors. This is sufficient proof of the fact that appellant is the legal title holder and as such is presumed to have been in possession of the land.

Reversed and remanded with instruction to quiet title in appellant upon his reimbursing respondents for all sums expended in the purchase of the property from the county and for all taxes paid by them together with interest at the legal rate. Respondents should be allowed to remove the frame building which they have placed on the property. Costs to appellant.

McDONOUGH, C. J., and PRATT, WOLFE, and LATIMER, JJ., concur.