Filed 8/28/25  Zakharia v. Krzemuski CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| GEORGE ZAKHARIA et al., | B331231 |
| Cross-complainants and Appellants, | (Los Angeles County Super. Ct. No. BC597883) |
| v. | |
| PAUL KRZEMUSKI, as Trustee, etc., | |
| Cross-complainant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Theresa M. Traber, Judge.  Affirmed.

Fernald & Zaffos, Brandon C. Fernald, Gina McCoy and Clay R. Wilkinson for Cross-complainants and Appellants.

Law Offices of Robert Scott Shtofman, Robert S. Shtofman; Marcus, Watanabe & Enowitz and Daniel J. Enowitz for Cross-complainant and Respondent.

_____

George and Hoda Zakharia (the Zakharias)[1] faced foreclosure after defaulting on two home loans secured by deeds of trust on their Los Angeles residence.  In 1992, after moving abroad, the Zakharias entered into a contract with their neighbor, Violette Adamian (Adamian).  Adamian loaned the Zakharias $35,000 with an option to purchase the property and assume the existing mortgages for forgiveness of the loan.  The Zakharias did not repay the loan, and their representative executed and recorded a deed transferring ownership of the property to Adamian.  Adamian made payments on the mortgages and property taxes until her death in 2013.  Since 2015, both the Zakharias and Adamian's son, Paul Krzemuski (Krzemuski), have been engaged in protracted litigation over ownership of the residence.  Ultimately, the trial court granted Krzemuski's renewed summary judgment motion.  The judgment awarded Krzemuski title to the residence based on adverse possession.  The Zakharias appeal, contending that the judgment was based on inadmissible evidence, and that triable issues of fact exist whether (1) Krzemuski proved title by adverse possession, and (2) the applicable statutes of limitations barred the Zakharias' cross-complaint.  We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.    **The Zakharias' Financial Problems**

In 1988, the Zakharias purchased a house located at 1817 Rial Road in Los Angeles, California (the Property) for $640,000.  The Zakharias made a downpayment of $160,000 and took out a first mortgage from Glendale Federal Bank in the amount of

---

[1] We use the Zakharias' first names alone when necessary for clarity and simplicity.

2

$480,000.  The Zakharias later took out a second mortgage from Transamerica Financial Services in the amount of $254,577.88.  The Zakharias defaulted on the first mortgage in 1991, which had grown to $536,408.84 by March 1992.  Around this time period, the second mortgage was in arrears, because George "had cash flow problems."  George testified in deposition that he did not make any money in the United States, and that his wife did not work.

On February 24, 1992, a "Notice of Default" was recorded in the amount of $254,577.88 pursuant to the power of sale provision in the second deed of trust.  On March 4, 1992, Glendale Federal Bank recorded a "Notice of Trustee's sale Under Deed of Trust" and provided notice that the Property would be sold at a Trustee's Sale on April 1, 1992.  The Zakharias did not make any payments to rescind the default.

## II.     The Transaction for the Property

During this time period, Adamian told George's father, Fouad Zakharia (Fouad), that she wanted to purchase the Property.  Fouad informed the Zakharias.  On March 24, 1992, Adamian's husband, an attorney, sent a letter to Glendale Federal Bank requesting that it postpone the Trustee's Sale so Adamian could explore purchasing the Property and assuming the mortgage payments.  As a result, the Trustee's Sale was postponed.

By May 1992, the Zakharias were residing in France.  On May 7, 1992, Adamian gave $35,000 to Fouad, who accepted the payment on the Zakharias' behalf.  On May 13, 1992, Hoda executed a general power of attorney at the United States Embassy in France.  The power of attorney authorized George to " 'sell or hypothecate or transfer any real property' " on Hoda's

3

behalf. George then traveled to Los Angeles and met with Adamian to sign documents related to the sale of the Property.

On May 20, 1992, Adamian paid Transamerica Financial Services $88,013.52 to clear the Zakharias' default. On May 21, 1992, George met with Adamian to sign documents on his own and Hoda's behalf: (1) A notarized "Grant Deed" transferring the Property to Adamian as her separate property; (2) the sale contract, entitled, "Agreement to Loan Money and Option to Purchase Property" (Agreement);[2] (3) a " 'Promissory Note Secured by Deed of Trust' "; (4) an "Abstract of Option to Purchase" that was recorded, granting Adamian or her assignee the exclusive right to purchase the Property; and (5) a "Deed of Trust and Assignment of Rents."

Before leaving the United States, George executed a general and durable power of attorney on May 21, 1992, that was recorded. It authorized Fouad, who remained in Los Angeles, to act on the Zakharias' behalf concerning the sale of the Property. The Zakharias have been living outside the United States since the summer of 1992.

## III.  Adamian's Mortgage and Property Tax Payments

Between May 1992 and her death in 2013, Adamian made "numerous" payments for the mortgages and property taxes.

---

[2] In the Agreement, the Zakharias acknowledged: (1) The loans secured by the first and second deeds of trust were in arrears; (2) "As further consideration" for Adamian's $35,000 loan, the Zakharias "agree to sell to [Adamian] and grants [Adamian] the exclusive Option to purchase" the Property subject to the existing encumbrances; and (3) the purchase price of the Property would be "forgiveness" of the $35,000 loan or the sum of $35,000 less the unpaid balance of the loan.

Adamian also paid the Zakharias' 1991 property tax arrearages. Conversely, the Zakharias were unable to demonstrate that they, Fouad, or anyone on their behalf, made any mortgage or property tax payments on the Property after May 1992. The Zakharias never investigated whether the mortgage was being paid.

The Zakharias failed to repay the $35,000 loan. On May 21, 1993, Fouad, again acting under his general power of attorney, executed a "Deed In Lieu of Foreclosure" that was recorded. This document conveyed the Property to Adamian.

## IV.    The Litigation

Following Adamian's death in 2013, Krzemuski became the successor trustee of the Violette Krzemuski, aka Violette Adamian 2013 Family Trust. On October 14, 2015, Krzemuski sued the Zakharias to quiet title. On November 16, 2015, the Zakharias filed a cross-complaint against Krzemuski for slander of title and to quiet title.

In January 2017, the trial court denied Krzemuski's motions for leave to file a first amended complaint and for summary judgment. The court granted the Zakharias' motion to strike Krzemuski's complaint.

In April 2018, the trial court granted Krzemuski leave to file a "compulsory cross-complaint."[3] Krzemuski's cross-complaint was for declaratory relief, to quiet title, and imposition and foreclosure of equitable lien against the Zakharias.[4]

---

[3] The order granting Krzemuski's motion for leave to file a compulsory cross-complaint is not contained in the record, but its existence is uncontested.

[4] This case is unusual in that the operative pleadings consist of two cross-complaints. The record reflects Krzemuski and the Zakharias are improperly and consistently referred to as

On February 3, 2023, Krzemuski filed a renewed motion for summary judgment, or in the alternative, summary adjudication. Krzemuski argued, among other things, he acquired title to the Property by adverse possession under color of title and claim of right. Krzemuski also argued the Zakharias' claims were barred by the applicable statute of limitations.

The trial court granted Krzemuski's summary judgment motion on May 17, 2023. The trial court denied the motion as it related to transfer of title. The trial court found that "[the] documents raise serious questions about the nature of the property transaction since they document various possible scenarios, including a secured loan and/or an option to buy later in addition to an immediate sale based on delivery of the signed grant deed." However, the trial court granted the motion as it related to Krzemuski's adverse possession claim and statute of limitations defense to the Zakharias' cross-complaint. The court found that Krzemuski's evidence satisfied every element of his adverse possession claim and that "[t]he Zakharias [made] little effort to dispute the facts proved by Krzemuski and generally respond that they are undisputed or unknown to the Cross-Complainants." The trial court also found that the Zakharias' claims to recover the Property were untimely.

To facilitate this appeal, the parties stipulated to entry of judgment. The judgment of June 21, 2023, awarded Krzemuski title to the Property and found that the Zakharias' cross-complaint was barred by the applicable statute of limitations. The Zakharias timely appealed.

---

plaintiff and defendants, respectively. This was likely a holdover from the parties' initial pleadings.

6

**DISCUSSION**

**I.    Summary Judgment and Standard of Review**

Summary judgment is appropriate if the submitted documents show "there is no triable issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)[5] Here, Krzemuski moved for summary judgment on his cause of action to quiet title. Accordingly, it was his burden to produce admissible evidence "prov[ing] each element of the cause of action entitling [him] to judgment on the cause of action." (§ 437c, subd. (p)(1).) Once Krzemuski satisfied that burden, the burden shifted to the Zakharias "to show that a triable issue of one or more material facts exists as to the cause of action." (*Ibid.*; see also *City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1081.) To establish a triable issue of material fact, the Zakharias were required to produce substantial responsive evidence. (See *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 162–163.) However, if Krzemuski failed to meet his burden, the trial court was required to deny his motion, even if the Zakharias produced no controverting evidence. (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 468.)

We independently assess whether summary judgment is appropriate. (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 272.) Our task is to review the trial court's *ruling*, not its *rationale*, so we may affirm on any ground raised by the parties below. (*Atalla v. Rite Aid Corp.* (2023) 89 Cal.App.5th 294, 307;

---

[5] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

*Scheer v. Regents of University of California* (2022) 76
Cal.App.5th 904, 913.)

## II. Elements of Adverse Possession

To obtain title through adverse possession, Krzemuski
must establish that: (1) Adamian actually occupied the Property
"under such circumstances as to constitute reasonable notice to
the owner," (2) her possession was "hostile to the owner's title,"
(3) she claimed the Property as her own "under either color of
title or claim of right," (4) her possession was "continuous and
uninterrupted for five years," and (5) she paid "all the taxes
levied and assessed upon the property during the period."
(*Preciado v. Wilde* (2006) 139 Cal.App.4th 321, 325; *Dimmick v.
Dimmick* (1962) 58 Cal.2d 417, 421; see also §§ 322–325.)

Krzemuski maintains that Adamian occupied the property
starting in or about 1993. On appeal, the Zakharias argue that
Fouad lived at the property between 1992 and his death in 2001.
The evidence they cite does not support that assertion, e.g.,
Fouad's death certificate lists a different address. Nevertheless,
it matters not for purposes of our decision whether Adamian's
occupancy began in 1993 or 2001.

## III. Adamian Paid the Property Taxes

The Zakharias first argue that Krzemuski relied on
inadmissible evidence, viz., exhibit 57, to prove that Adamian
paid the property taxes. Exhibit 57 consists of a series of
photocopied canceled checks—one dated 1993, and others dated
from 2001 to 2004, and from 2006 to 2012. The checks were
drawn on the account of "Violette Adamian" or "Violette
Krzemuski," were made payable to "Los Angeles County Tax

8

Collector," and were signed by Adamian.[6]  Exhibit 57 also consisted of copies of the "pay stubs" to be returned with each check.  The pay stubs reflected the amount of the corresponding payment due and the amount being sent to the tax collector.[7]  The Zakharias argue that this exhibit was inadmissible, so Krzemuski failed to satisfy his initial burden.

The standard of review for evidentiary rulings on summary judgment has yet to be settled by the California Supreme Court.  Courts have applied both standards.  (See *LAOSD Asbestos Cases* (2023) 87 Cal.App,5th 939, 946 [abuse of discretion]; *Wiz Technology, Inc. v. Coopers & Lybrand LLP* (2003) 106 Cal.App.4th 1, 12–13 [de novo review].)  We need not resolve this issue, as our ruling would be the same under either standard.

### A.    Exhibit 57 Was Not Hearsay Evidence

The Zakharias argue that exhibit 57 constituted inadmissible hearsay evidence.  Hearsay is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."  (Evid. Code, § 1200, subd. (a).)  However, "[d]ocuments not offered for the truth of the matter asserted are, by definition, not hearsay."  (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 316 (*Jazayeri*).)

---

[6] The Zakharias are not claiming Adamian's signature was not her own.

[7] The pay stubs showed the property taxes were to be paid by the Krystal Biochemical Corporation.  The Zakharias conceded the entity was created by Adamian.

9

Here, the trial court overruled the Zakharias' objections on the grounds that "the documents referenced by Krzemuski are not being offered for the truth of the matters stated but rather as facts or acts constituting a property transaction." ~(Motion to Augment at 417)~ We agree with the trial court. Exhibit 57 was not offered to prove the truth of the matters asserted in those documents. Rather, exhibit 57 was properly introduced as evidence of the operative acts: The Assessor levied certain amounts in property taxes; Adamian instructed the bank to pay those amounts; and the bank received the checks and transferred the funds. Where " ' "the very fact in controversy is whether certain things were said or done and not . . . whether these things were true or false, . . . in these cases the words or acts are admissible not as hearsay[,] but as original evidence." ' " (*Jazayeri, supra,* 174 Cal.App.4th at p. 316; accord, *People v. Smith* (2009) 179 Cal.App.4th 986, 1003.)

On appeal, the Zakharias argue that the canceled checks in exhibit 57 were "offered for the truth of their contents, not for their mere existence to support a property transaction." ~(AOB 48)~ By definition, checks are not hearsay. (*United States v. Pang* (9th Cir. 2004) 362 F.3d 1187, 1192.) Rather, checks "are legally operative documents with a meaning independent of the truth of the words they display," i.e., they are instructions to the bank. (*United States v. Davis* (D.C. Cir. 2010) 596 F.3d 852, 856-857.) "[T]echnically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.' . . . [B]ank checks serve[] only to direct the drawee banks to pay the face amounts to the bearer, while committing [the payor] to make good the obligations if the banks dishonor[] the drafts." (*Williams v. United States* (1982) 458 U.S. 279, 284.)

10

Therefore, we find that exhibit 57 was not barred by the hearsay rule.  Exhibit 57 demonstrates that Adamian instructed her bank to pay the property taxes, and that the bank received and acted upon those instructions.  That was sufficient to satisfy Krzemuski's initial burden on summary judgment.

**B.      Exhibit 57 Was Properly Authenticated**

The Zakharias argue that exhibit 57 was not properly authenticated because Krzemuski merely declared that he located the documents in his parents' storage unit.  Evidence Code sections 1410 through 1421 enumerate the various methods of authenticating documents.  But these methods are not exclusive.  (Evid. Code, § 1410; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1372.)  "Circumstantial evidence, content and location are all valid means of authentication."  (*People v. Gibson* (2001) 90 Cal.App.4th 371, 383.)

Here, circumstantial evidence, location, and content were sufficient to authenticate exhibit 57.  Krzemuski's declaration avers, in March 2017, after the trial court denied his initial summary judgment motion, he discovered documents pertaining to Adamian's purchase of the Property.  These documents, including exhibit 57, were all found among his parents' belongings following their deaths.  The belongings were stored in one or more of 2,500 boxes kept in a storage facility at the time.  The Zakharias do not dispute exhibit 57 was recovered with other documents that George does not deny having signed on May 21, 1992.  Further proof of authenticity came from the fact that exhibit 57 and the other May 21, 1992 documents executed by George were also signed by Adamian.  Accordingly, the trial court did not err in admitting exhibit 57 as properly authenticated.

To the extent the Zakharias are claiming the trial court should have excluded exhibit 57 as violating the secondary evidence rule, we disagree. Once Krzemuski established the exhibit's authenticity, Evidence Code section 1521 required it be excluded as secondary evidence only if the trial court found that (1) "[a] genuine dispute exists concerning material terms of the writing and justice requires the exclusion" or (2) "[a]dmission of the secondary evidence would be unfair." (Evid. Code, § 1521, subds. (a)(1)–(2), (c).)

The insurmountable problem the Zakharias face is they failed to explain either in their written objections or at the hearing why the trial court should sustain their secondary evidence objection. The Zakharias now make much of the fact that exhibit 57 consisted of photocopied documents, which Krzemuski averred were "true and correct copies" attached to his summary judgment motion. However, the Zakharias never urged the trial court to exclude exhibit 57 on that ground. Nor did the Zakharias argue that its admission ran afoul of the secondary evidence rule because of a genuine dispute involving material terms or a lack of fairness. Further, the Zakharias appear to misperceive the secondary evidence rule as part of authentication. Therefore, we find that exhibit 57 was properly authenticated.

C.     **Krzemuski's Declaration Did Not Lack Foundation to Support Exhibit 57**

The Zakharias objected to much of Krzemuski's declaration as lacking foundation within the meaning of Evidence Code sections 702 and 800. Evidence Code section 702, subdivision (a) provides in pertinent part: "[T]he testimony of a witness concerning a particular matter is inadmissible unless he has

personal knowledge of the matter. Against the objection of a party, such personal knowledge must be shown before the witness may testify concerning the matter."[8]

On appeal, the Zakharias contend the trial court erred in overruling their objections "because portions" of Krzemuski's declarations "supporting the introduction of exhibit 57 are incompetent for lack of personal foundation." The Zakharias have not specified the portions to which they are referring on appeal. They argue only that Krzemuski's declaration failed to demonstrate "any personal knowledge" of the " 'checks' " in exhibit 57. The only portion of the declaration that specifically relates to exhibit 57 is Krzemuski's statement, "I found amongst my parents' belongings at the Acton, California storage facility a number of my mother's personal checks, cashier checks, bank statements, and other documents."

As discussed, exhibit 57 was properly authenticated by Krzemuski's declaration. His personal knowledge of the checks was limited to testimony identifying them and attesting to when and how he found them. Their admission into evidence was not predicated on Krzemuski's averments he had personal knowledge of their contents or the circumstances in which they were written. Therefore, we find that exhibit 57 was properly admitted.

### D.    The Zakharias Do Not Create a Triable Issue

---

[8] Evidence Code section 800 provides: "If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is:  [¶]  (a)  Rationally based on the perception of the witness; and [¶]  (b)  Helpful to a clear understanding of his testimony."  We do not see how this statute applies here.  Krzemuski's opinion is not at issue.

13

Exhibit 57 was sufficient to establish that Adamian paid the property taxes during the requisite five-year time period. The Zakharias failed to produce any evidence to rebut this showing.  They did not dispute Krzemuski's assertions in his Separate Statement of Undisputed Material Facts that Adamian consistently paid taxes on the Property from at least 2001 until her death in 2013.  Instead, in their Separate Statement in Opposition, the Zakharias indicated these asserted facts were "unknown."  (See Cal. Rules of Court, rule 3.1350(f)(2) [the separate statement in opposition "must unequivocally state whether that fact is 'disputed' or 'undisputed' "].)  This alone supports the trial court's ruling.

Moreover, the Zakharias admitted facts and introduced evidence that *support* Krzemuski's claim.  The Zakharias admitted they did not pay the property taxes from 1991 to 2023 for a property they have purportedly owned since 1988.  Similarly, the Zakharias admitted they do not know "who, if anyone, paid the property taxes for the Property from 1991 to the present."

The Zakharias produced "Certificate[s] of Payment[s]" from the Los Angeles County Treasurer and Tax Collector.[9]  The certificates, which Krzemuski offered in support of his original motion for summary judgment, show payments of the assessed taxes on the Property from 2010 through 2015.  The certificates bear the typed certification of Treasurer and Tax Collector "Joseph Kelly," signed on his behalf by Researcher "Annie Nguyen," stating that the certificates are official records.

---

[9] We granted the Zakharias' unopposed motion to augment the record to include these certificates, among other things.

14

As the Zakharias note in their opening brief, the judge hearing the original motion found these certificates "unavailing" because "[w]hile these documents demonstrate that the Property taxes have been paid, there is no indication (in the form of receipts, cancelled checks, or otherwise) that Krzemuski or his mother were the ones who paid the taxes." Krzemuski has since located the checks, which make clear that Adamian paid these taxes. Thus, the Zakharias' own evidence corroborates that Adamian paid the taxes for at least three years before her death.

### E. The Zakharias Forfeited Their Argument Under Section 325, Subdivision (b)

On appeal, the Zakharias contend that Krzemuski failed to comply with section 325, subdivision (b), which requires a party seeking adverse possession to introduce " 'certified records of the county tax collector' " as proof that the property taxes were paid.[10] The Zakharias did not raise this issue before the trial court, which they concede on appeal. Therefore, we find that the Zakharias have forfeited this argument. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.)

---

[10] Section 325, subdivision (b) states: "In no case shall adverse possession be considered established under the provision of any section of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have timely paid all state, county, or municipal taxes that have been levied and assessed upon the land for the period of five years during which the land has been occupied and claimed. Payment of those taxes by the party or persons, their predecessors and grantors shall be established by certified records of the county tax collector."

15

### F.    Conclusion

We have considered the Zakharias' remaining arguments and find none to be persuasive.  Accordingly, we agree with the trial court that there is no triable issue whether Adamian paid the property taxes during the requisite five-year time period.

## IV.   Krzemuski Established a "Claim of Right"

Next, the Zakharias argue that there are triable issues concerning Krzemuski's claim under both "color of title" and "claim of right."  "Adverse possession under color of title is based on a written instrument, judgment, or decree which purports to convey real property" but is defective for some reason.  (*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1110–1111 (*Aguayo*).) " 'Color of title is received in evidence for the purpose of showing that the title is adverse and it therefore dispenses with other proof of *hostile* or adverse claim.' " (*Estate of Williams* (1977) 73 Cal.App.3d 141, 147.)  A plaintiff must have had a good faith belief that she had legal title to the Property at the time.  (*Buic v. Buic* (1992) 5 Cal.App.4th 1600, 1604.)

By contrast, adverse possession under a claim of right is not founded on a written instrument, judgment, or decree. (*Aguayo*, *supra*, 213 Cal.App.4th at p. 1111.)  "Claim of right adverse possession is codified by sections 324 and 325."  (*Ibid.*) In addition to the other elements, the plaintiff must establish that the property "has been protected by a substantial enclosure" or "has been usually cultivated or improved."  (§ 325, subd. (a)(1)–(2); *Landini v. Day* (1968) 264 Cal.App.2d 278, 282 (*Landini*).) The trial court found adverse possession under color of title, and in the alternative, under a claim of right.

On appeal, the Zakharias argue that there is a triable issue as to Adamian's good faith belief of ownership, as required for

16

adverse possession under color of title.  The Zakharias challenge the trial court's decision to admit exhibit 65, which is an unsigned letter from Adamian to the Zakharias exercising her option to purchase the Property, purportedly establishing her good faith.  The Zakharias also focus on whether the May 21, 1992, Grant Deed and related documents were "legally undelivered" and whether Fouad's power of attorney was valid when he signed and recorded the Deed in Lieu of Foreclosure on behalf of the Zakharias.  We need not reach these and other issues, which relate to an adverse possession claim under color of title because we find that Krzemuski established adverse possession under a claim of right.

Krzemuski relies on his own declaration, which states that Adamian "maintained and improved" the Property beginning in 1992, which included "routine maintenance" during the five-year period before the initial complaint was filed.  Specifically, Adamian replaced the air conditioning unit in 2008.  Adamian replaced "the ceiling wood" in 2008 and "the wood on the roof" in an unspecified year.  Adamian further supervised brush clearance between 1992 and 2013.

Krzemuski also relies on the declaration of Jacqueline Wein (Wein), Adamian's friend, who states that she referred Adamian to a handyman.  Wein witnessed the  handyman fixing the roof and "some other things inside the house."  Wein corroborated that Adamian installed an air conditioning unit in the house.

The Zakharias do not dispute this evidence.  In their Separate Statement in Opposition, the Zakharias responded "Unknown" to the improvements attributed to Adamian in Krzemuski's Separate Statement of Undisputed Material Facts.  On appeal, the Zakharias argue that none of these activities

17

satisfy the improvement requirement.[11]  We disagree.  The requirement that the land be "usually cultivated or improved" means only that it should be "cultivated or improved in the manner or to the extent usual in the case of similar property." (*Gray v. Walker* (1910) 157 Cal. 381, 385; see also *Rideout v. Covillaud* (1919) 39 Cal.App. 417, 420 [" 'improved' " means " 'in the manner or to the extent usual in the case of similar property' "].)  Installing a new air conditioning unit, replacing the ceiling and roof, clearing brush, and fixing things inside the house are "usual" home improvement projects.  Therefore, we agree with the trial court that the undisputed evidence supports adverse possession under a claim of right.[12]

## V.     There Was Open and Notorious Use

Krzemuski established that Adamian occupied the Property.  In his declaration, Krzemuski states that Adamian used the Property continuously to "relax, cook, do gardening, . . . enjoy the view, and to enjoy some of her belongings that she stored there."  Adamian kept some of her possessions at the

---

[11] Before the trial court, the Zakharias relied on a declaration from Christopher Polk, who inspected the Property in January 2016 and found the house in a state of disrepair.  This declaration is not relevant because the inspection was approximately three years after Adamian's death.

[12] Unclean hands may be a defense to adverse possession under a claim of right.  (*Aguayo, supra*, 213 Cal.App.4th at pp. 1112–1113.)  The Zakharias forfeit this issue by failing to raise it on appeal.  (*See Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 982.)

Property, including "large quantities of furniture, rugs, antiques, appliances, clothers [*sic*], and [her husband's] law books, legal files and office furnishings." In her declaration, Wein states that Adamian used the Property since the early 1990's and would host her "for tea or something to eat, and we would eat together inside the house and speak French to one another." Finally, Krzemuski relies on the declaration of John David Strachan, who states that Adamian's husband let him stay at the house when he visited Los Angeles for a reunion in 1994. According to Strachan, the Property was located "just up the road" from Adamian and her husband's house.

This evidence establishes that Adamian actually occupied the Property, which she used as a home or an accessory dwelling unit to her own house. This is sufficient. (*Landini*, *supra*, 264 Cal.App.2d at p. 283 ["It is sufficient if the land is occupied and used in the same manner that owners of land of like character in that vicinity usually occupy and exercise dominion over their property."].)

Again, in their Separate Statement in Opposition, the Zakharias responded "Unknown" to Adamian's uses of the property. On appeal, the Zakharias merely argue the evidence was insufficient. We conclude otherwise from our independent review.

The Zakharias also argue that Adamian's use of the Property was not sufficiently open and notorious to give notice to the true owner. We disagree. Adamian's use was sufficient to give actual if not reasonable constructive notice to the Zakharias living in France. Indeed, constructive notice may be found even if an owner has no actual knowledge of the adverse claimant's possession. In *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, the

Court of Appeal held that an owner living in Ireland had constructive notice of the adverse claimant's possession. "When an adverse claimant is 'in open . . . possession . . . and the true owner fails to look after his interests and remains in ignorance of the claim, it is his own fault.' " (*Id.* at p. 328.) Tellingly, Adamian and her husband had keys to the Property, which they used from May 21, 1992, until Adamian's death in 2013. The Zakharias acknowledged they did not have keys and could not recall having one since 1998. Therefore, we agree with the trial court that there is no triable issue on this point.[13]

## VI. There Was Adverse and Hostile Possession

The Zakharias argue that Krzemuski did not show that Adamian's possession was "adverse and hostile to the true owner." (*Hansen v. Sandridge Partners, L.P.* (2018) 22 Cal.App.5th 1020, 1033.) In this context, "hostile" means only that " 'the owner has not expressly consented to it by lease or license or has not been led into acquiescing in it by the denial of adverse claim on the part of the possessor.' " (*Felgenhauer v. Soni* (2004) 121 Cal.App.4th 445, 450, quoting 3 Casner, American Law of Property (1952) Title by Adverse Possession, § 5.4, p. 776.) The Zakharias did not make this argument before the trial court. Regardless, the Zakharias have taken the position throughout this litigation that they never consented to Adamian's use of the Property.

---

[13] On appeal, the Zakharias do not argue that Adamian's possession was not continuous and uninterrupted for at least five years.

20

## VII.  The Zakharias' Claims Were Untimely

Krzemuski, as cross-defendant, moved for summary judgment on his affirmative defense of statute of limitations.  The procedural rules in this instance are the same: Summary judgment was appropriate if Krzemuski established this affirmative defense and the Zakharias, as cross-complainants, failed to raise a triable issue of material fact as to that affirmative defense.  (§ 437c, subd. (p)(1); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 853.)

In his motion, Krzemuski argued that the Zakharias' cross-complaint was time-barred by section 318.  The statute prescribes the statutory period for bringing an action to recover property, like an action to quiet title: "No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear[s] that the [legal owner], his ancestor, predecessor, or grantor, was seized or possessed of the Property in question, within five years before the commencement of the action."  The statute of limitations starts running once " 'substantially all the elements essential to the establishment of title by adverse possession [are] shown to exist.' " (*Harrison v. Welch* (2004) 116 Cal.App.4th 1084, 1096, italics omitted.)

The Zakharias filed their cross-complaint on November 16, 2015.  Here, as discussed, Adamian perfected her ownership of the Property through adverse possession before November 16, 2010.  Therefore, the trial court correctly found that their claims to recover the Property were untimely.

## DISPOSITION

The judgment is affirmed.  Paul Krzemuski is entitled to recover his costs on appeal.

NOT TO BE PUBLISHED.


GOORVITCH, J.**

We concur:


LUI, P. J.


CHAVEZ, J.

---

**** Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22